As said in Beard v. Austin State Banking Com'r, supra, "appellee's remedy was to sue on the prior note or the debt itself."

■■ Where the parties to a promissory note, which is past due, mutually agree to an extension of the time of payment, a new contract based upon a new consideration deemed valuable in law arises between the parties. The payee impliedly promises to surrender his present right to demand immediate payment and to forego suit during the extension period; the payor impliedly promises to pay the indebtedness on the new maturity date and subject to the terms and conditions of the renewal agreement. Each of these new promises constitute the consideration for the other and a binding contract as modified by the new agreement results. McNeill v. Simpson (Tex. Com. App.) 39 S.W.(2d) 835; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128. A barred debt is sufficient consideration for such renewal. Goldfrank v. Young, 64 Tex. 432; Interstate Building & Loan Ass'n v. Goforth, 94 Tex. 264, 59 S. W. 871; Hoya v. Self (Tex. Com. App.) 245 S. W. 424.

■ Whether P. A. Jones was or was not insolvent when the extension contract was made is immaterial, if the agreement was that his signature should be obtained and that requirement was part of the contract of extension. The parties so contracted and are so bound.

While in certain cases insolvency may be a sufficient excuse for not suing a joint maker of a note, insolvency is never a valid reason for failing to secure the insolvent's signature to a note when the other party's signature to such note is conditioned upon the insolvent's signature being obtained, and without which the other party would not have signed.

■■ There is no question of primary or secondary liability on note No. 5 in this case, because no one could be liable thereon except M. T. Jones, the only signatory thereto. Neither is there any question to be considered with reference to the stipulations relating to renewals contained in note No. 1; they were not continued in note No. 5, were not pleaded by appellant in the trial court, and of course are not available to him on appeal.

■ We have therefore reached the conclusion that it is not necessary to answer questions Nos. 1, 2, and 3, that questions Nos. 4 and 5 should be answered in the affirmative, and so recommend.

CURETON, C. J.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

CITY NAT. BANK OF BEAUMONT v. AMERICAN SURETY CO. OF NEW YORK et al.

No. 1574—5926.

Commission of Appeals of Texas, Section A.
July 19, 1932.

Orgain, Carroll & Bell and Ewell Strong, Jr., all of Beaumont, for plaihtiff in error.

A. D. Dyess, of Houston, for defendants in error.

HARVEY, P. J.

In November, 1926, the Watson Company, a corporation, and Chas. F. Law, jointly, entered into a contract with the Jefferson Amusement Company of Beaumont to build for the latter company a theater building in Beaumont. It was agreed by and between the Watson Company and Law that they were to share equally the expenses and profits of the building enterprise. The proceeds of the building enterprise, as same were collected by the joint adventurers, Law and the Watson Company, were deposited by them in the City National Bank of Beaumont to their joint credit. It was understood that, with respect to the affairs of the joint adventure in which Law and the Watson Company were engaged, either joint depositor could draw checks against the joint deposit account. It was also understood that Law should have the right to draw checks against said account in payment of his current living expenses. Various checks were drawn against and paid from said deposit account, in accordance with the above understanding of the parties. The theater building was completed in January, 1928, and the final installment of the contract price of the work was collected from the amusement company and deposited in the joint deposit account in the bank. Immediately thereafter the joint adventurers had a final settlement with respect to the joint building enterprise; that is to say, all unpaid debts that had been incurred in the prosecution of the enterprise were paid from the joint deposit account in the bank, and the net profits that had been earned were determined. In this settlement the net profits were ascertained to be about $35,000. The Watson Company withdrew from the joint deposit account the amount of its share of profits earned. Law also withdrew sums from the joint deposit account, leaving a balance in the joint deposit account, on February 3, 1928, of approximately $8,730.32. This controversy relates to a part of said balance. In order to get the material aspects of the controversy, it becomes necessary for us to go back to the early part of the year 1926. At that time Law contracted to erect a school building in Beaumont for the diocese of Galveston. The American Surety Company was the surety on his bond, which was given for the purpose of securing, among other things, the payment of laborers and materialmen. The school building was completed in June, 1927, and the American Surety Company, as surety on Law's bond, had to pay to laborers and materialmen the sum of $8,730.32. For this sum Law executed to the surety company his note, and, at the same time, executed to the surety company an assignment of $8,730.32 of the profits which were expected to accrue to Law from the theater building enterprise. The instrument of assignment bears date

June 13, 1927, and, after preliminary recitals, reads as follows:

"Now, therefore, for and in consideration of the payment of 8730/32/100 Dollars by the American Surety Company of New York for and in behalf of the said Chas. F. Law to certain creditors of the said Chas. F. Law, I, the said Chas. F. Law, do hereby assign, transfer and set over to the American Surety Company of New York, its successors and assigns, all of my right, title and interest in the profits due, or may hereafter be due, from erection of the aforementioned theatre building in the city of Beaumont, Texas, to the extent of $8730.32 Dollars.

"To have and to hold, the same to the said American Surety Company of New York, its successors and assigns forever."

The American Surety Company at once notified the Watson Company of the above assignment, and, in reply, the latter company wrote the following letter to the surety company:

"American Surety Co., Santa Fé Building, Dallas, Texas.

"Gentlemen: As per the request of your Mr. Gregory we beg to advise that we have no objection to Mr. Law's agreement with you concerning his interests in the profits of the contract of the Beaumont Theatre Building.

"In so far as this profit will permit we will see that the assignment dated June 13th, 1927, in your favor is protected, but in no wise will we assume any responsibility or guarantee anything.

"Yours very truly,
"G. S. Watson,
"President."

During the progress of work on the school building, Law had borrowed from the City National Bank of Beaumont, the plaintiff in error here, the sum of $2,500 for the purpose of paying for labor and material going into that building, and the sum borrowed was so used. Law executed his note to the bank for the amount of said loan. The note was renewed several times, and the last renewal note was past due and unpaid on February 3, 1928. On the last-mentioned date, as already shown, a balance of $8,730.32 stood to the credit of the joint deposit account of Law and the Watson Company, which account had been created by the deposit of proceeds from the theater building enterprise. As we have seen, at that time all the affairs of this joint enterprise had been wound up, all creditors had been paid, and the Watson Company had received its share of the profits. On the last-mentioned date, the bank required Law (who was insolvent) to give it a check for $2,500 against said joint deposit account, for the amount due on the said renewal note which represented Law's individual debt to the bank. Law gave the check, as required, and the bank charged same against the said joint deposit account, and delivered Law's note to him as having been satisfied. In the transaction, however, Law informed the bank of the rights of the American Surety Company and of the assignment that he had made to that company. Prior to such transaction, the bank had no notice, of any character, of said assignment or of the rights of the surety company in respect of the funds that had been deposited in the bank, to the credit of Law and the Watson Company. A day or so before February 3, 1928, the Watson Company, against the expressed wishes of Law, drew and forwarded to the surety company a check for $8,730.32, against said joint deposit account, to cover the sum due the latter company under said assignment. This check reached the bank a day or so after February 3, 1928, and was dishonored by the bank on account of the fact that the charging of Law's said check for $2,500 against the joint deposit account had left insufficient funds in that account to pay the check drawn in favor of the surety company. A balance of some $6,000 then stood on the bank's books to the credit of the joint deposit account, and, by consent of all interested parties, this balance was afterwards paid to the surety company. This suit was brought against Law and the bank, by the surety company and the Watson Company, to recover the said sum of $2,500 which had been applied to the payment of Law's note, as set out above. The trial court rendered judgment for the surety company and the Watson Company, and that judgment has been affirmed by the Court of Civil Appeals. 34 S.W.(2d) 321.

The question of controlling importance is whether or not, under the facts of this case, the bank had the right to set off, against the joint deposit account of Law and the Watson Company, the individual debt of Law. The bank contends that it had that right, for the reason that Law was insolvent, and the Watson Company, on February 3, 1928, no longer had a beneficial interest in the balance which then stood to the credit of the joint deposit account. It is quite probable that this contention could be maintained if we were permitted to disregard, altogether, the rights of the American Surety Company in the funds which had been deposited in the bank by Law and the Watson Company. For in that case the balance which then stood to the credit of the joint depositors would be treated as belonging to Law, exclusively, and thus supply the ingredient of mutuality between the debts involved in the attempted set-off. The generally accepted rule respecting a bank's right of set-off is stated in 3 Ruling Case Law, p. 591, as follows: "The right of a bank to apply a deposit to indebtedness due from the depositor, results from the right of set off which obtains between persons occupying the rela-

tion of debtor and creditor, and between whom there exist mutual demands, and it is familiar law that mutuality is essential to the validity of a set off, and that, in order that one demand may be set off against another, both must mutually exist between the same parties." See, also, 1 Morse on Banks & Banking, § 326. The joint deposit account represented an indebtedness of the bank to Law and the Watson Company, jointly; the debt which the bank undertook to set off against a portion of the joint deposit account was the individual debt of Law. Plainly the debts were not the mutual debts of Law and the bank, unless it can be said that the balance in the joint deposit account really belonged to Law. If such balance had really belonged to Law, he being insolvent, equity would disregard the apparent joint character of the deposit account, and allow his individual debt to be set off against the joint deposit account, pro tanto. But, as a matter of fact, the sum of $8,730.32 of the funds which had been deposited by Law and the Watson Company did not really belong to either of the joint depositors, as we shall proceed to demonstrate.

The assignment which Law had made to the American Surety Company in June, 1927, covered a portion of the profits to be earned by the joint adventurers, Law and the Watson Company, in the construction of the theater building. The assignment comprehended a defined portion of the share of Law in the expected profits. Whether such assignment was absolute, in the sense that the surety company acquired an indefeasible right thereunder, or merely operated as collateral security for Law's note to the surety company, is not material. In either event, the instrument had effect to invest the surety company with a present right to a designated portion of the profits which were expected to accrue to Law in the joint enterprise. 5 C. J. p. 957, § 142. That right attached to funds constituting profits, as soon as the profits were earned. It cannot be reasonably inferred that, in the transaction involving the execution of said assignment, and the promise of the Watson Company to see that same would be "protected," any of the parties to the transaction contemplated that distribution of the profits would be made before the funds constituting same reached the hands of the joint adventurers. On the contrary, the circumstances of such transaction imply the assumption by Law and the Watson Company of the fiduciary duty of collecting, for the use and benefit of the surety company, the portion of the profits to which the rights of the latter company, under said assignment, became attached. To the extent, therefore,

of the sum of $8,730.32, the proceeds of the building enterprise which were collected by Law and the Watson Company, and deposited by them to their joint credit, constituted trust funds belonging to the surety company. Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; Bank of Sherman v. Weiss, 67 Tex. 331, 3 S. W. 299.

It matters not that the bank, at the time those deposits were received, was ignorant of the fact that a portion of the funds so deposited constituted trust funds in the hands of Law and the Watson Company. Regardless of the bank's ignorance in this respect no right of set-off, touching said trust funds, could arise in favor of the bank, except with respect to a joint indebtedness of the joint depositors. The balance which stood to the credit of the joint deposit account on February 3, 1928, did not really belong to Law, but, in equity and good conscience, belonged to the surety company. The relation of Law and the Watson Company to such fund was that of joint trustees. We have been cited to no authority, and have found none, which holds that, where trust funds are deposited in a bank, to the joint credit of persons who are in fact joint trustees, but not known by the bank to be such, the bank acquires any right of set-off involving said trust funds and an individual debt owing to the bank by one of the joint depositors. The bank acquires no such right in cases of that sort, for the reason that the demands are not mutual, and justice does not require them to be treated as mutual. 1 Morse on Banks and Banking, § 326, par. (e).

■ The fact that Law gave the check for $2,500 against the balance in the joint deposit account, thereby in effect attempting to assign a portion of the fund as payment of his debt to the bank, does not better the position of the bank. Even though the Watson Company, the other joint depositor, had consented for this to be done, which is really not the case, the assignment thus attempted would be of no avail, for the reason that the bank was informed, at the time, that the fund belonged to the surety company. Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; Hess v. Turney, 110 Tex. 148, 216 S. W. 621.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.