WESTERN SHOE COMPANY V. AMARILLO NATIONAL BANK.

No. 6638.  Decided May 20, 1936.
(94 S. W., 2d Series, 125.)

*Simpson, Dorenfield, Foster & Fullingim,* of Amarillo, for appellant.

The bank having been advised by plaintiff that it was conducting a shoe department in the H. L. Barnard, Inc., store and that the proceeds from the sale of its shoes were being deposited by the H. L. Barnard, Inc., in its account with the defendant bank, the bank could not, with such notice, acquire any interest in any funds on deposit in the name of H. L. Barnard, Inc., Departments, which in fact belonged to the plaintiff.  Steere v. Stockyards Natl. Bank, 256 S. W., 586; United States Fid. & Guar. Co. v. Adoue, 104 Texas, 379, 138 S. W., 383, 37 L. R. A. (N. S.), 409; Toll v. Lewis, 136 Ark., 318, 206 S. W., 442.

*Cooper & Lumpkin,* of Amarillo, for appellee.

Appellant's pleadings showing that H. L. Barnard, Inc., had two accounts in and with appellee bank, one in the name of H. L. Barnard, Inc., and the other in the name of H. L. Barnard, Inc., Departments, appellant cannot engraft under such pleadings and agreements a trust fund upon the moneys that were deposited in appellee bank in the name of H. L. Barnard, Inc., Departments.  Matthis v. Pridham, 20 S. W., 1015; Texas Loan Co. v. Taylor, 88 Texas, 47; Allen v. Garrison, 92 Texas, 547.

Under the Negotiable Instrument Act, Article 5947, Sec. 189, R. S., 1925, a check drawn by a depositor on a bank does not operate as an assignment of the funds on deposit with the bank in favor of the payee of said check until it has been accepted by the bank, and unless the same is accepted the payee of the check has no cause of action against the bank. Central Texas Bank v. First National Bank, 243 S. W., 998; Parmer v. First National Bank, 2 S. W. (2d) 939.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The statement by the Court of Civil Appeals is very concise and we will therefore set it out in full. It is as follows:

"H. L. Barnard, Inc., was, in such corporate name, engaged in the business of operating a department store in a leased building at 905 Polk Street in Amarillo, Texas, and a depositor of the Amarillo National Bank of Amarillo, in which it carried two accounts. One account was opened on Feb. 11, 1927, with $8,195.79 deposited to the credit of H. L. Barnard, Inc. The other account was opened on March 7, 1927, with $1203.29 deposited in the name of H. L. Barnard, Inc., Departments.

"The Western Shoe Company, a corporation, as lessee, by written contract rented from H. L. Barnard, Inc., as lessor, certain space in the building at 905 Polk Street, to be used exclusively by lessee for conducting a shoe and hosiery department. Under the lease contract the lessee was to purchase without liability upon the lessor, all merchandise used in such shoe department. The moneys received from customers through the sale of merchandise by the lessee was to be paid to the cashier of the lessor each day and an accurate and separate record kept of such money. The lessor agreed to place the money so received to the credit of lessee on the day of sale and such money was to be held in trust by the lessor and an accounting made to the lessee on the 5th and 20th of each month, of such funds. The lessor was authorized to deduct from the money so received a certain percentage for expenses and as consideration for the lease.

"On December 10, 1928, H. L. Barnard, Inc., had on deposit in its corporate name with the bank $1295.83 and borrowed the further sum of $2500.00 and executed its note therefor payable to the Bank on January 15, 1929.

"The account in the name of H. L. Barnard, Inc., Departments, was closed on June 22, 1928, and discontinued until April 2, 1929. On that day H. L. Barnard, Inc., on its check, withdrew from the account in its corporate name $1500.00, on April

3rd it withdrew therefrom $217.75, and on April 4th $122.92, and deposited in the bank each of said items on the day withdrawn, in the name of H. L. Barnard, Inc., Departments. The money so withdrawn was all that was deposited after June 22, 1929, in the name of H. L. Barnard, Inc., Departments. On April 5th, 6th and 8th, H. L. Barnard, Inc., checked out the balance it had on deposit, in its corporate name, with the Bank. On April 11, 1939, there was on deposit with the Bank in the name of H. L. Barnard, Inc., Departments, the sum of $511.99, and on said day H. L. Barnard, Inc., by its president, Milton L. Hirschfield, gave the Western Shoe Company a check on the Amarillo National Bank for said sum drawn against the account in the name of H. L. Barnard, Inc., Departments. On April 13th the check was presented to the Bank, payment demanded and by the Bank refused for want of sufficient funds. At that time H. L. Barnard, Inc., was still indebted to the Bank on the $2500.00 note, which was past due, and for the purpose of paying a part thereof, the Bank had, on April 6th, by sufficient entries on its books, applied said $511.99 as a credit on said note. Shortly after April 11th, H. L. Barnard, Inc., filed a voluntary petition in bankruptcy and was thereafter adjudged a bankrupt, its property sold and the proceeds thereof applied to the liquidation of its debts.

"On April 3, 1930, the Western Shoe Company instituted suit in the District Court of Potter County against the Amarillo National Bank to recover the $511.99 evidenced by the check in its favor drawn on the account deposited in the name of H. L. Barnard, Inc., Departments.

"A trial was had, a verdict directed in favor of the Bank, an appeal prosecuted by the Western Shoe Company to this Court and the judgment reversed and the cause remanded. Western Shoe Co. v. Amarillo National Bank, 42 S. W. (2d) 469.

"On a trial in District Court on March 20, 1933, the Bank again recovered judgment and the Western Shoe Company appealed.

"The Court in the issues submitted to the jury assumed as a fact, of which no complaint is made, that the $511.99 involved was the money of appellant. The appellee asked special issues which, if submitted, would have required a finding as to the trust character and ownership of said money. These issues were refused, but such action of the Court is not challenged.

"The jury, on sufficient testimony, found, in effect, that at the time the $511.99 was applied as a payment on the note of H. L. Barnard, Inc., the Bank had no actual knowledge of the

trust character and ownership of the money and was without notice of facts sufficient to put it on inquiry as to the true character thereof.

"The appellant contends that in as much as it conclusively appears from the record that the Western Shoe Company was the owner of the $511.99, the Bank, even if it be conceded that it had neither notice nor knowledge of the character of the fund, was not authorized to apply said sum on the note of H. L. Barnard, Inc., because it failed to show that the lack of notice or knowledge had resulted in any change in its position and no superior equity was raised in favor of the Bank."

The Court of Civil Appeals has certified for our determination the following question:

"Was the appellee, having no actual or implied knowledge that the Western Shoe Company was the owner of the $511.99 carried on deposit in the name of H. L. Barnard, Inc., Departments, authorized to apply said sum on the past due note the Bank held against H. L. Barnard, Inc.?"

From the foregoing statement it appears conclusive that although the $511.99 stood in an account which had been opened by H. L. Barnard, Inc., nevertheless the same was the property of appellant, Western Shoe Company. The precise terms of the contract between H. L. Barnard, Inc., and appellant, are as follows:

"All moneys received from customers, through the sale of merchandise by the Lessee, shall be paid to the cashier of the Lessor each day, who shall keep a full, true, accurate and separate record, open and available at all times for the inspection of both parties hereto; and Lessor agrees that it will keep strict acccount thereof and place same to the credit of the Lessee on the day of sale, and that these moneys so received will be held in trust by the Lessor for the Lessee."

As we construe this contract, in light of the actual dealings of the parties, the beneficial title to the funds received by appellant and turned over to H. L. Barnard, Inc., never did pass to that company; and although it seems to have had control over same and was authorized to make the deposit as it did, it held said funds as trustee for appellant. This being true, we are of the opinion that the precise question here involved was decided by the Commission of Appeals in the case of City National Bank of Beaumont v. American Surety Company, 52 S. W. (2d) 259.

In the case above mentioned a joint account had been opened in the name of Watson Company and Charles F. Law with the City National Bank of Beaumont. They each drew

checks against this account. It represented funds received by them under a contract for the construction of a theater building. After the completion of the building the net profits were determined and Watson Company withdrew from the joint account its portion of same, leaving a balance of approximately $8730.32 belonging to Law. Prior to the accumulation of this fund, Law had made an assignment to the American Surety Company of all net profits to be realized by him from the enterprise to the amount of $8730.32. The bank had no knowledge of this assignment. Law gave a check against the sum remaining in the joint account in favor of American Surety Company, but before this check was returned to the bank for payment the bank had undertaken to apply $2500.00 of the amount in the account to payment of a debt due by Law to it. The question of whether or not the bank had a right of set-off against the funds held by Law as trustee for the American Surety Company was presented and decided adversely to the bank. The following portions of the opinion are applicable to the present case:

"The question of controlling importance is whether or not, under the facts of this case, the bank had the right to set-off, against the joint deposit account of Law and the Watson Company, the individual debt of Law. The bank contends that it had that right, for the reason that Law was insolvent, and the Watson Company, on February 3, 1928, no longer had a beneficial interest in the balance which then stood to the credit of the joint deposit account. It is quite probable that this contention could be maintained if we were premitted to disregard, altogether, the rights of the American Surety Company in the funds which had been deposited in the bank by Law and the Watson Company. For in that case the balance which then stood to the credit of the joint depositors would be treated as belonging to Law, exclusively, and thus supply the ingredient of mutuality between the debts involved in the attempted set-off. The generally accepted rule respecting a bank's right of set-off is stated in 3 Ruling Case Law, p. 591, as follows: 'The right of a bank to apply a deposit to indebtedness due from the depositor, results from the right of set-off which obtains between persons occupying the relation of debtor and creditor, and between whom there exist mutual demands, and it is familiar law that mutuality is essential to the validity of a set-off, and that, in order that one demand may be set-off against another, both must mutually exist between the same parties.' See, also, 1 Morse on Banks & Banking, Sec. 326. The joint

deposit account represented an indebtedness of the bank to Law and the Watson Company, jointly; the debt which the bank undertook to set-off against a portion of the joint deposit account was the individual debt of Law. Plainly the debts were not the mutual debts of Law and the bank, unless it can be said that the balance in the joint deposit account really belonged to Law. If such balance had really belonged to Law, he being insolvent, equity would disregard the apparent joint character of the deposit account, and allow his individual debt to be set-off against the joint deposit account, pro tanto. But, as a matter of fact, the sum of $8,730.32 of the funds which had been deposited by Law and the Watson Company did not really belong to either of the joint depositors, as we shall proceed to demonstrate.

"The assignment which Law has made to the American Surety Company in June, 1927, covered a portion of the profits to be earned by the joint adventurers, Law and the Watson Company, in the construction of the theater building. The assignment comprehended a defined portion of the share of Law in the expected profits. Whether such assignment was absolute, in the sence that the surety company acquired an indefeasible right thereunder, or merely operated as collateral security for Law's note to the surety company, is not material. In either event, the instrument had effect to invest the surety company with a present right to a designated portion of the profits which were expected to accrue to Law in the joint enterprise. 5 C. J., p. 957, sec. 142. That right attached to funds constituting profits, as soon as the profits were earned. It cannot be reasonably inferred that, in the transaction involving the execution of said assignment, and the promise of the Watson Company to see that same would be 'protected,' any of the parties to the transaction contemplated that distribution of the profits would be made before the funds constituting same reached the hands of the joint adventurers. On the contrary, the circumstances of such transaction imply the assumption by Law and the Watson Company of the fiduciary duty of collecting, for the use and benefit of the surety company, the portion of the profits to which the rights of the latter company, under said assignment became attached. To the extent, therefore, of the sum of $8,730.32, the proceeds of the building enterprise which were collected by Law and the Watson Company, and deposited by them to their joint credit, constituted trust funds belonging to the surety company. Continental Nat. Bank v.

Weems, 69 Texas, 489, 6 S. W., 802, 5 Am. St. Rep., 85; Bank of Sherman v. Weiss, 67 Texas, 331, 3 S. W., 299.

"It matters not that the bank, at the time those deposits were received, was ignorant of the fact that a portion of the funds so deposited constituted trust funds in the hands of Law and the Watson Company. Regardless of the bank's ignorance in this respect no right of set-off, touching said trust funds, could arise in favor of the bank, except with respect to a joint indebtedness of the joint depositors. The balance which stood to the credit of the joint deposit account on February 3, 1928, did not really belong to Law, but, in equity and good conscience, belonged to the surety company. The relation of Law and the Watson Company to such fund was that of joint trustees. We have been cited to no authority, and have found none, which holds that, where trust funds are deposited in a bank, to the joint credit of persons who are in fact joint trustees, but not known by the bank to be such, the bank acquires any right of set-off involving said trust funds and an individual debt owing to the bank by one of the joint depositors. The bank acquires no such right in cases of that sort, for the reason that the demands are not mutual, and justice does not require them to be treated as mutual. 1 Morse on Banks and Banking, sec. 326, par. (e)."

The fact that the account did not stand in the name of H. L. Barnard, Inc., which owed the debt to the Bank, but in an account designated H. L. Barnard, Inc., Departments, and the further fact that this account represented trust funds in which H. L. Barnard, Inc., had no interest, presents a fact situation which places this case in a class to itself. It is not contended that the Bank had in any manner been misled or induced to extend credit to H. L. Barnard, Inc., by reason of the account in the name of H. L. Barnard, Inc., Departments, and in our opinion it would be manifestly unjust to allow it to appropriate money belonging to appellant to the satisfaction of a debt due by H. L. Barnard, Inc.

The question propounded by the Court of Civil Appeals is answered in the negative.

Opinion adopted by the Supreme Court May 20, 1936.