**CASSIDY COMMISSION COMPANY,**
Appellant,

v.

**SECURITY STATE BANK,** Navasota,
Texas, et al., Appellees.

No. 13443.

Court of Civil Appeals of Texas.

Houston.

March 10, 1960.

Robert W. Dean, Navasota, Robert Sansom, Forth Worth, John Fox Holt, Curtis White, Dallas, for appellant.

W. E. Barron, Navasota, Joe J. Newman, Houston, for appellees.

BELL, Chief Justice.

The appellant instituted this suit against Oran W. Cook and appellee to recover $8,500 allegedly belonging to appellant which Cook, its agent, wrongfully deposited to his general checking account in appellee Bank and which the appellee applied to the personal indebtedness of Cook. On trial to the court, judgment was rendered for appellant against Cook for $8,448.48. He has not appealed. Judgment was also that appellant take nothing from appellee.

The evidence reflects that appellant is a commission firm engaged in the purchase and sale of cattle for a commission. Sometime in 1952 it employed Cook as an agent to buy and sell cattle for its account. Under the terms of the employment agreement, which was oral, Cook would spend a few days each week in the stock auction ring in Houston. The other days of the week he would spend out in various neighboring counties looking for persons who had cattle to sell and persons who wished to buy cattle. If he purchased cattle for appellant he would draw a draft on appellant in favor of the seller. If he sold cattle for appellant he would either accept the purchaser's check payable to appellant and turn it over to appellant's office, or accept a draft drawn in favor of appellant and turn it over to appellant's Houston office. He had no authority to handle the money in the purchase and sale of cattle for appellant except in the manner above stated.

Prior to Cook's employment by appellant, he had for some years been engaged on his own in the purchase and sale of cattle. Under his agreement with appellant he was forbidden to speculate in cattle. To "speculate" means to purchase cattle for quick sale with the hope of profit. However, Cook could buy cattle for himself for pasturing and after pasturing for some time, sell them.

Cook had a general account with appellee. He had had it for many years. He used it to deposit his salary checks from appellant as well as any money he derived from the sale of his own cattle. He purchased cattle for himself and gave checks on this account.

On November 3, 1954, Cook purchased some cattle for the account of appellant and drew a draft on appellant in favor of E. W. Wright, the seller. The draft was paid. The cattle were put up for sale but the purchaser who had been lined up did not purchase. Cook then sold a part of these cattle through the Athens Commission Company on November 5 for $6,501.31. Others of them he sold at Frederick, Oklahoma for $742.88, and others he sold at Stamford, Texas for $1,732.18. The aggregate of these sales of cattle belonging to appellant amount to $8,976.37.

On November 8, the balance in Cook's account was $131.78, before Cook deposited the two checks from Athens Commission Company. It should here be noted that in the three sales above set out Cook took checks payable to himself, he having sold the cattle in his own name. On November 13 Cook deposited in his account the $742.88 check and on November 15 he deposited the $1,732.18 check. These were the only times that Cook ever deposited in his account money derived from the sale of cattle belonging to appellant. Appellee had previously loaned Cook money. At the time of the deposit of the $6,501.31 on November

8, Cook was indebted to appellee on a note for $1,875, which was past due, it having fallen due in October. He was also indebted to appellee on a renewal note for $17,000 executed September 6, 1954. This note was not due until December 31. Each note was secured by a chattel mortgage on cattle belonging to Cook which he was supposed to have on pasture. It should be pointed out that these notes represented loans made to Cook prior to any money of appellant being deposited in Cook's account and the particular notes and the chattel mortgages were prior to such event. The only money in Cook's account on the dates material, except for $131.78, was money obtained from the sale of cattle belonging to appellant.

On November 8, after Cook deposited the two checks from Athens Commission Company, appellee charged Cook's account with $1,891.66, which represented the past due $1,875 note and accrued interest.

On November 10, Cook issued two checks to appellant, one for $2,828.48 and one for $5,620 drawn on appellee bank. They reached the bank for payment on November 15 and were not paid, on the instructions of Mr. A. W. Greenwood, Sr., Vice President of the bank. This was done because at the time the appellee was of the view that the livestock given to secure the $17,000 note were not available and Cook and representatives of appellee were then in the process of rounding up the cattle. It subsequently developed that there was a gross deficiency in the number of cattle covered by the mortgage. On November 27, the account of Cook was charged with $5,200, the balance available, and this amount was applied on the note, which appellee had declared due as it had the right to do. Such cattle as could be found were sold by appellee and applied on the debt.

Thereafter, about December 13, 1954, appellant's counsel talked with Mr. Greenwood about the money belonging to appellant and Mr. Greenwood would do nothing. Mr. Greenwood did not remember when

he first talked with appellant's counsel but thought it was several years later before trial of the case, but said he couldn't say when it was.

On October 31, 1956, this suit was filed. Citation was issued the same day but was not served until January 4, 1957.

Appellee, in its original answer, pled the two year statute of limitation and that appellant was estopped to claim these funds because it had given no notice to appellee of Cook's relationship to appellant and appellee had advanced large sums of money to Cook which it would not have done if it had known of the relationship or, at least, it would have required appellant to become a surety for Cook. It also pled laches generally. By trial amendment appellee pled that it had sent its statement to Cook showing the state of his account and neither appellant nor Cook had protested its correctness in writing within one year, as required by Article 342, Sec. 711, Vernon's Ann.Tex.Civ.St., and also that Cook's deposit was in a general account, and appellee, having no notice of appellant's claim, had a right to offset the indebtedness due it by Cook. By another trial amendment appellee pled Article 342, Sec. 704, Vernon's Ann.Tex.Civ.St.

The trial court in its judgment made certain specific findings, only some of which we deem it material to notice, and we only state the substance of the findings.

1. The bank account was maintained by Cook in the manner we have above noticed.

2. The oral contract of employment and Cook's authority under it were as we have heretofore stated.

3. Cook during the week commencing November 1, 1954 purchased for Cassidy's account various cattle which are designated "Wright" cattle in the pleadings. Thereafter during the same week Cook unlawfully and in direct violation of the terms of his employment agreement sold these cattle in his own name. The proceeds of

the sale of these cattle were deposited to Cook's account, there being deposits on November 8, 13 and 15, in the aggregate amount of $8,976.37. The two checks for $2,848.48 and $5,620 from Cook to appellant were returned to appellant November 15 with the notation "insufficient funds". (It should be stated that they were insufficient due to the appropriation by the bank of $1,891.66 of the account to apply on its pre-existing indebtedness.)

4. On November 8 Cook was indebted to appellee on two notes executed September 16, each secured by a chattel mortgage on various livestock. The note for $1,875 was due October 16 and the $17,000 note was due December 31. Those two notes were given in renewal and extension of a balance due on two notes that had been previously given on April 16, which had in turn been given in renewal and extension of a prior indebtedness. The chattel mortgage authorized the acceleration of the notes if appellee felt itself insecure or any of the cattle covered by it were disposed of.

5. The several amounts in Cook's general account during November, 1954 were partly the proceeds of the sale of appellant's cattle, which sales were not authorized by Cassidy in the manner in which they were consummated.

6. The appellee bank had no notice prior to charging any amounts against Cook's account that Cook's account had deposits of money derived from the sale of appellant's cattle to the extent of $8,976.37.

7. Finding was expressly against appellee bank on its defenses of limitation, laches and estoppel.

We will first notice briefly appellee's assertion that the case should be affirmed because of Article 342, Sec. 704, Vernon's Ann.Tex.Civ.St., which prevents recovery, and that the court should have found in favor of appellee on its pleas of limitation, estoppel and laches.

Appellee has cited us no authority to show the applicability of Article 342–704, and we fail to see its applicability to the facts before us.

■ The suit was brought before the expiration of two years from the wrongful appropriation. Citation was immediately issued, but the officer did not serve it for two months. The trial court considered this to be timely and so do we. In a suit, not in the Justice Court, limitation is tolled by the filing of the suit where citation is timely issued and served.

■ On the issue of estoppel the court's finding is amply supported by evidence. The evidence shows that appellee made all of its loans prior to the time that any of appellant's monies were put in Cook's account. Too, the only occasion that any of its monies were deposited was in November, 1954, and then the deposits were made without appellant's knowledge or authority. Nothing was advanced to Cook by appellee in reliance on the deposits of appellant's monies.

■ Appellee apparently contends that since it changed its position by releasing its chattel mortgage and notes in January, 1955, at a time it allegedly had no notice of appellant's claim, and since appellant did not file suit until nearly two years later, laches applies. It seems to treat this as a part of laches. Certainly it did not specifically plead an estoppel based on this asserted change of position. Too, it discusses that Cook remained in the employment of appellant until a few months before trial in 1958, and appellant did not seek to recoup its loss from Cook. It did not plead this, except as it may consider it a part of laches, which is a species of estoppel in pais.

We think it sufficient to say that some evidence which the court apparently believed shows that appellee knew of appellant's claim in December, 1954. Anything it did after that it did with notice. As far as laches is concerned, it is to be ob-

served that in January, 1955 appellee released its note and mortgage. The release of the mortgage amounted to nothing because the cattle covered by it, so far as anyone could tell, had been disposed of. Too, appellee took a new unsecured note from Cook and a note for $9,000 from his sister, which at the time of trial was being kept current. Appellant could hardly be said to have acted tardily in not filing the suit before January, 1955. The appellee doesn't even contend that in the interim between January, 1955 and January, 1957, when it was served with citation, it did anything to change its position.

█ It is true that Cook remained a salaried employee of appellant until the latter part of 1958 and appellant made no effort to collect from him. This was not specifically pleaded as a defense and was waived.

Appellant contends the trial court erred in finding appellee did not know prior to its application of the deposit to Cook's debt that the money in the account belonged to appellant. Too, if it did not have actual notice it had knowledge of such facts as placed it on inquiry, and inquiry would have disclosed this to be true. Then the assertion is that if there was evidence to support such findings, the findings are contrary to the overwhelming weight and preponderance of the evidence. Mr. Cook said he told Mr. Greenwood the two checks deposited November 8 represented money belonging to appellant. Mr. Greenwood denied this. He also denied notice from any source.

We have studied the whole record carefully and find there was evidence to support these findings. Applying the rule in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we hold such findings not to be so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

█ The controlling question in this case is whether appellee bank can apply monies that in fact belong to appellant, which have been wrongfully deposited to a general account in the name of Cook by Cook without the knowledge of appellant, to the preexisting indebtedness of Cook, when the Bank had no knowledge of the fact the funds belonged to appellant and was in possession of no facts which placed appellee on inquiry, and when the bank lost nothing, it being in the same position after application of the deposit.

We have reached the conclusion that as against appellant, under all the facts of this case, appellee had no such right and when it applied such to the preexisting indebtedness owed it by Cook it became liable to appellant.

█ There is in the United States a division of authority as to the correct rule. The majority of the states that have passed on the question have held there is no liability on the part of a bank which applies a depositor's general account to a preexisting indebtedness owed it unless the bank had notice that trust funds had been deposited in the account, or, unless the bank had knowledge of such facts that it was placed on inquiry concerning the nature of the funds deposited. The basis of this rule allowing the setoff by the bank of a depositor's general account is sometimes stated as being a lien in favor of the bank and is sometimes stated to be because of mutuality between the bank and the depositor. The correct basis would seem to be mutuality between the bank and the depositor. When a depositor makes a deposit the bank agrees it owes him the amount of the deposit and it repays it as he directs. The depositor to this extent is a creditor of the bank. If the depositor also owes the bank money, the bank is the depositor's creditor. If either sued the other, the other could plead as an offset any amount due it from the plaintiff. Since this is true, a bank without suit may apply the depositor's account to a debt owed by the depositor. See a discussion of the basis of the rule with regard to the right of setoff in Western Shoe Co. v. Amarillo National Bank, Tex.

Com.App., 127 Tex. 369, 94 S.W.2d 125; and City National Bank of Beaumont v. American Surety Co., Tex.Com.App., 52 S.W.2d 259. The cited cases did not involve the fact situation we have here, but they involved the rule of setoff as between the bank and the depositor.

The rule in the lesser number of states holds that a bank is liable to the beneficiary of funds that have wrongfully been deposited in a general account of a depositor where the bank applies such account to an indebtedness owed by the depositor to it, even though the bank had no notice of the character of the funds and was in possession of no facts which would place it on inquiry, unless the bank has in some way changed its position to its detriment. The rule is based on the superior equity in the real owner of the funds. It is sometimes referred to as the equitable rule.

A discussion of these rules will be found in 13 A.L.R. 324; 31 A.L.R. 756; 50 A.L.R. 632; 7 Amer.Jur., § 639, and in Steere v. Stockyards National Bank, Tex.Com.App., 113 Tex. 387, 256 S.W. 586. The Texas cases involving the application by a bank of a general deposit in the name of a depositor to a debt owed to the bank by such depositor, when the account is in part made up of trust funds, are to be found in 8 Tex. Jur.2d, Sec. 228, pp. 409–413.

The Texas cases, as is true of the cases in all states, hold that if a bank applies such an account to a preexisting indebtedness of a depositor, it is liable to the real owner of the funds which were wrongfully deposited in the account if the bank had notice of the nature of the funds or had knowledge of facts which placed it on inquiry. Steere v. Stockyards National Bank, supra.

No case has been cited to us, and we have been unable to find any, decided by our Supreme Court, either through an opinion or by refusal of a writ of error, where application was made by the bank without notice or without its being placed on inquiry, that the deposit applied consisted in part of trust funds. In the Steere case the Commission of Appeals had before it a situation where there was notice and was answering questions certified by the Court of Civil Appeals. The questions certified were not based on the fact of the absence of notice and the Commission of Appeals merely noted that in answering the questions it was not required to go as far as some courts. It, however, then noted some of the authorities, holding there was liability even without notice.

There are in Texas, however, two cases decided by two different Courts of Civil Appeals and one decided by the United States Court of Appeals for the Fifth Circuit that arose in Texas. They all hold the bank to be liable to the real owner of the funds wrongfully deposited which were applied to the preexisting indebtedness owed by the depositor to it, even though the bank had no notice of the trust funds being deposited in the account and the bank was not placed on inquiry by facts in its possession concerning the nature of the funds deposited, when its position has not been changed to its detriment. They thus follow the minority rule.

In the case of Davis v. Panhandle National Bank, 29 S.W. 926, the Ft. Worth Court of Civil Appeals had before it a case where Davis, the owner of cattle, had turned them over to a man named Hancock to be sold for him. Hancock sold the cattle and wrongfully deposited the proceeds of the sale in his own "open account" in the Panhandle National Bank. The plaintiff alleged notice on the part of the bank. The court's opinion does not state what the evidence showed. Judgment was for the bank, and Davis appealed. The case was reversed because the trial court had refused to charge the jury that Davis was, under the facts entitled to judgment irrespective of notice. The Court of Civil Appeals reversed the case for failure to give the requested charge and in doing so, said:

"Under the facts of this case, we are of opinion that such a charge should

have been given. There is neither allegation nor evidence that the bank lost its debt by reason of the transaction, before it was advised that he was not entitled to this credit; and, in the absence of such evidence, we do not see upon what principle it should be allowed to retain this money. The evidence is undisputed that the proceeds of these three cars of calves, as between Hancock and appellant, did in fact belong to the latter, and that the former had no right whatever to use it. Under these circumstances, it is perfectly manifest that the bank would have no right to appropriate appellant's money to the satisfaction of an account which Hancock already owed it."

In the case of First National Bank of Greenville v. First State Bank of Campbell, Tex.Civ.App., 252 S.W. 1089, 1090, one Gilbreath had deposited funds belonging to appellee in appellant bank in his own name. This was applied to his preexisting debt to the appellant. The trial court instructed a verdict for appellee, who had sued to recover the money. Some evidence showed notice of the ownership of the funds on the part of appellant. Apparently there was some evidence to the contrary. The Court of Civil Appeals held that under the circumstances notice was immaterial. The court, in affirming the judgment, said:

"Even if it be conceded that Gilbreath did not represent to the appellant bank * * * that the money belonged to the Campbell State Bank * * * nevertheless, appellant could not apply the proceeds of the sale to the extinguishment of Gilbreath's debt to it under the circumstances * * *. The appellant bank suffered no loss by the transaction. Its position was in no way changed or prejudiced. To require payment of the funds to the Campbell State Bank leaves the appellant bank in precisely the same situation where it stood at the time the deposit was made in relation to Gilbreath's indebtedness to it."

See also Johnson v. Robinson, 5 Cir., 203 F.2d 135; Brady v. American National Bank of Oklahoma City, 120 Okl. 159, 250 P. 1006, 1007.

We are thoroughly convinced that the so-called minority view is founded on sounder reasoning and equity and we, therefore, hold that under the facts of this case, as heretofore stated, appellee was liable to appellant to the extent that appellee applied appellant's funds in Cook's account to the notes of Cook.

Of course, appellant under the circumstances must trace its funds. We must, therefore, briefly analyze the account of Cook.

On November 5, before any deposits of appellant's funds had been made, there was a balance of $131.78. There were no deposits or withdrawals prior to November 8 when $6,501.31 was deposited. These were funds of appellant. On the same day appellee applied $1,891.66 to one of Cook's notes. Since $131.78 was already in the account, the appropriation of appellant's funds was in the amount of $1,759.88. Thereafter, funds belonging to appellant in the total amount of $2,475.06 were deposited. No funds from any other source were put in the account. On November 8 there was a balance of $4,741.43 in the account. This was money belonging to appellant. This, plus the $2,475.06 makes a total of $7,216.49 in the account belonging to appellant. Paid out of this, prior to applying $5,200 on Cook's note, were checks drawn on Cook's account aggregating $1,979.30. This left a balance on November 27 of $5,237.19. The bank on this day applied the $5,200 on Cook's note. We do not find from the record what happened to the balance of $37.19.

From this analysis it will be seen that appellant traced its funds which were applied wrongfully by appellee to Cook's preexisting debt in the aggregate amount of $6,959.88.

The judgment of the trial court is reversed and judgment is now here rendered

in favor of appellant against appellee in the amount of $6,959.88, together with interest on the sum of $1,759.88 from November 8, 1954, and on the sum of $5,200 from November 27, 1954, at the rate of 6% per annum, together with all costs of court.

Reversed and rendered.

WERLEIN, J., not sitting.