**Nora A. SOTO, Trustee for and Next Friend of Alisha–Brandie Soto, Appellant,**

v.

**FIRST GIBRALTAR BANK, FSB SAN ANTONIO, Appellee.**

No. 04–93–00202–CV.

Court of Appeals of Texas, San Antonio.

Dec. 29, 1993.

Rehearing Denied Dec. 29, 1993.

---

Jonathan Yedor, San Antonio, for appellant.

Ray B. Jeffrey, John P. Guillory, Akin, Gump, Strauss, Hauer & Feld, San Antonio, for appellee.

Before BUTTS, PEEPLES and LOPEZ, JJ.

## OPINION

PEEPLES, Justice.

Appellant's motion for rehearing is denied. Our opinion of November 17, 1993, is withdrawn and replaced by the following.

The sole issue in this appeal is whether a bank may offset funds in a revocable, nontestamentary trust account against a debt the settlor-trustee owes the bank. Appellant Nora Soto and her husband Lorenzo opened the trust account in 1989 for their daughter Alisha–Brandie. Both parents were trustees with the right to revoke the trust, acting together, and withdraw funds from it, rights neither of them exercised. When Lorenzo's personal account became overdrawn, the bank applied the money in the trust account to offset Lorenzo's overdraft. When she learned of these events, Nora Soto brought this suit for damages based on deceptive trade practices, breach of bailment agreement, and conversion. After a pretrial hearing, the trial court ruled that the bank had the right to offset the funds in the trust account. The parties agree that the dispositive issue is whether a bank may offset revocable trust funds against a debt of its depositor, who is the trust's settlor. If the bank had the right to offset, none of Soto's causes of action are viable.

Soto does not challenge the procedure by which the court ruled, and we therefore will not question it. Both parties had earlier

presented these issues by summary judgment to a different judge, who denied both motions. The matter was later assigned for jury trial to Judge Gebhart, who recognized that the case turned on a somewhat novel legal question. With the consent of both attorneys, the court decided the legal issue, assuming as true the facts as alleged by Soto. Such a procedure would not have been proper without the consent of both parties. *See Ulloa v. Davila,* 860 S.W.2d 202, 204–205 (Tex.App.—San Antonio 1993, no writ). But it was permissible with their consent. Thus we review the court's legal ruling as we would review a directed verdict: we review the evidence favorably to Soto in determining whether she raised a fact issue on her causes of action.

Soto pleaded and offered to prove the following facts, which we accept as true. The Sotos gave $242 to their daughter and deposited it in the bank account; the Sotos were co-trustees; withdrawals required both signatures; the money was supposed to be used ultimately for the daughter's education; the Sotos told a bank officer about their goals and needs, and he suggested the trust account; almost all the money came from Nora Soto's savings; the Sotos were having marital difficulties and each wanted to insulate the account from unilateral withdrawals by the other; the Sotos dealt with San Antonio Savings Association, which was taken over by appellee First Gibraltar; Nora was never given a copy of the bank's depository agreement and was never told of the bank's right to offset.

■ The trust before us is known as a tentative trust, or a Totten trust, named for the New York case approving the use of revocable inter vivos trusts.

A deposit by one person of his own money in his own name as trustee for another standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration....

*In re Totten,* 179 N.Y. 112, 71 N.E. 748, 752 (1904). Revocable inter vivos trusts are valid in Texas. *See Westerfeld v. Huckaby,* 474 S.W.2d 189, 192 (Tex.1971); *Citizens Nat'l Bank v. Allen,* 575 S.W.2d 654, 657–58 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.). *See generally* Kenneth McLaughlin, Jr., *Joint Accounts, Totten Trusts, and the Poor Man's Will,* 44 TEX.B.J. 871 (1981).

■ The authorities that have considered the issue hold that creditors of the trustee-settlor may reach the assets in a tentative trust. That is, revocable savings account trusts are subject to the claims of the settlor-trustee's creditors. *Prestige Vacations, Inc. v. Kozak,* 471 F.Supp. 410, 411 (N.D.Ohio 1979); *In re Marriage of Flohr,* 672 P.2d 1024, 1026 (Colo.Ct.App.1971); *Passaic Nat'l Bank & Trust Co. v. Taub,* 137 N.J.Eq. 544, 45 A.2d 679, 680 (1946); *Vickers v. Lavine,* 56 A.D.2d 731, 392 N.Y.S.2d 753, 754–55 (App.Div.1977); *Banca D'Italia & Trust Co. v. Giordano,* 154 Pa.Super. 452, 36 A.2d 242, 243 (1944). The restatement summarizes the rule as follows:

> Although creditors of the settlor cannot reach the trust property merely because he has reserved the power of revocation (see § 330, Comment *o* ), creditors of a person who makes a savings deposit upon a tentative [Totten] trust can reach his interest since he has such extensive power over the deposit as to justify treating him as in substance the unrestricted owner of the deposit.

RESTATEMENT (SECOND) OF TRUSTS § 58, comment *d* (1959). Professor Scott phrases the same principle this way:

> Where a person deposits money in his own name in trust for another, thereby creating a tentative trust, he is so far the owner of the deposit that during his lifetime his creditors can reach it.

1A AUSTIN W. SCOTT & WILLIAM FRATCHER, THE LAW OF TRUSTS § 58.5, at 226–27 (4th ed. 1987).

■ Banks have a common-law right to offset and apply a depositor's general deposit to an indebtedness the depositor owes the bank on another account.[1] *First Nat'l Bank*

---

1. First Gibraltar's depository agreement gives it the same right by contract, though Nora Soto

v. *Winkler,* 139 Tex. 131, 161 S.W.2d 1053, 1056 (1942); *Security State Bank & Trust Co. v. Texas Bank & Trust Co.,* 466 S.W.2d 590, 592 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). But banks may not offset trust account funds in which the true owner is not the depositor. When a bank has actual or constructive knowledge that funds are held in trust for another, who is the true owner, "it may not seize and retain the funds held in trust in order to offset a debt of the depositor." *National Indem. Co. v. Spring Branch State Bank,* 162 Tex. 521, 348 S.W.2d 528, 529 (1961); *see also Western Shoe Co. v. Amarillo Nat'l Bank,* 127 Tex. 369, 94 S.W.2d 125, 128–29 (1936). The court in *National Indemnity* went further and held that even when the bank lacks constructive knowledge that the funds are held in trust, it may not offset them unless it has somehow changed its position detrimentally. *National Indem. Co.,* 348 S.W.2d at 529–31.

■ These decisions are not at odds with the Restatement and Professor Scott. The cited Texas authorities contemplated trust accounts in which the true owner was the beneficiary, not tentative trusts in which the true owner is the settlor-trustee. The funds at issue in *National Indemnity* were the insurance company's premiums, held for the company in trust by its agent, who was the depositor. By contrast, the Soto account was in reality owned by the parents, not by the beneficiary, their daughter. The parents had the use of the funds, and to this extent the "gift" of the money to the daughter was revocable. The rules stated in *National Indemnity* do not apply to trusts in which the settlor retained near-complete ownership and control. The Sotos' desire to accumulate funds for their daughter's education did not make the account a deposit for a specific, special purpose; they were general funds owned by the parents and available to the parents' creditors, including the bank. *See generally Martin v. First State Bank,* 490 S.W.2d 208, 211 (Tex.Civ.App.—Amarillo 1973, no writ) (discussion of general and special deposits). There is no suggestion that there were limits on the bank's right to use the funds while they were on deposit; on the

contrary, the bank was entitled to mingle the Soto funds with its other funds. *See id.* at 211–13.

Soto argues that even if a settlor's creditors can reach funds in a tentative trust by garnishment, banks should not have the same right to offset. It is true that a post-judgment garnishment plaintiff has reduced his claim to judgment, while an offsetting bank has not. But we think this makes no difference because the issue is not the strength of the bank's claim but the degree to which the corpus in a tentative trust is shielded by the law of trusts. Tentative trust funds have exposure to creditors, whether or not those creditors have reduced their claims to judgment. Because in reality the settlor-trustee owns the funds in a tentative trust, a bank should have the same rights of offset that it would have if the funds had been placed in an ordinary account.

■ Our holding does not denigrate tentative trusts. Our decision has nothing to do with the rights of beneficiaries or creditors after the settlor has died. We simply recognize the reality that the owner of the funds in a tentative trust is the settlor-trustee as long as he lives, not the beneficiary. Because the settlor-trustee has the absolute right to revoke the trust and take back the corpus during his lifetime, he is the owner, and such trusts funds are not sheltered from creditors or from banks to whom the settlor-trustee owes money.

■ The Sotos' argument that the money was a gift to their daughter must be considered in the context of the plain written terms of the trust account, which was revocable. The conclusory statement that the money was a gift cannot vary the account card, which states that the money is held in trust and that the settlors reserve the right to revoke it and withdraw the funds. An inter vivos gift must be absolute, not open for future reconsideration. *Akin v. Akin,* 649 S.W.2d 700, 704 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). The donor must give up dominion and control over the property. *Grimsley v. Grimsley,* 632 S.W.2d 174, 177–78 (Tex.App.—Corpus Christi 1982, no writ).

says she did not receive a copy of the agreement.

That the Sotos considered the transaction, in lay terms, a "gift" does not alter the bank's right to handle the account based on the written account card—as a revocable trust that the bank could offset against other debts of the settlor-trustees.

We hold that the tentative trust account was available to the bank, a creditor with a common-law right of offset. The judgment is therefore affirmed.