ACCEPTED
03-15-00339-CV
7305274
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/9/2015 10:18:07 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00339-CV

---

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/9/2015 10:18:07 AM
JEFFREY D. KYLE
Clerk

---

BEN MELTON,

Appellant

vs.

CU MEMBER'S MORTGAGE, a division of
COLONIAL SAVINGS, F.A., and FIRST WESTERN TITLE CO.

Appellees

---

On Appeal from the 340th District Court
of Tom Green County, Texas
Hon. Jay Weatherby Presiding
Trial Court Cause No. C103102C

---

APPELLANT'S BRIEF

---

Gregory Sherwood
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
State Bar No. 18254600
Email: gsherwood@mail.com

Attorney on Appeal
for Appellant Ben Melton

**ORAL ARGUMENT REQUESTED**

## Identity of Parties and Counsel in this Appeal

No. 03-15-00339-CV; *Ben Melton v. CU Member's Mortgage, a division of Colonial Savings, F.A., and First Western Title Co.*

<u>Ben Melton</u> (Appellant):

c/o attorney Gregory Sherwood

Trial Counsel:

James Mosser (Jan. 2015 atty. fee hrg.)
Alexis Steinberg (Jan. 2014 sum. jdgmt. hrg.)
Mosser Law, PLLC
2805 N. Dallas Parkway, Suite 222
Plano, Texas  75093

Appellate Counsel:

Gregory Sherwood
P.O. Box 200613
Austin, Texas 78720-0613

<u>CU Member's Mortgage, a division of Colonial Savings, F.A., and First Western Title Co.</u> (Appellees):

Mark Cronenwett (trial court and appeal)
Mackie Wolf, Zientz & Mann, PC
14150 N. Dallas Parkway, Suite 900
Dallas, Texas  75254

## Table of Contents

Identity of Parties and Counsel in this Appeal ........................................................ i

Table of Contents .................................................................................................. ii

Index of Authorities ............................................................................................... v

Statement of the Case ......................................................................................... viii

Statement Regarding Oral Argument .................................................................... ix

Issues Presented ..................................................................................................... x

      Issue 1: The trial court's summary judgment should be
reversed because appellant exercised due diligence in
serving citation when suit was filed four years after the
home equity loan was signed, 60 days elapsed to provide
appellees with an opportunity to cure, and appellees were
served on day 61 after suit was filed. ........................................................... x

      Issue 2: If Issue 1 is not granted, the summary judgment
order should be reversed because no statute of limitations
applies in suits for constitutional violations of home equity
loans. The Fifth Circuit incorrectly interpreted Texas state
law on this subject in *Priester v. JP Morgan Chase Bank, N.A.*,
708 F.3d 667 (5th Cir. 2013), and the Texas Supreme Court has
been asked to reject this holding in No. 14-0714, *Wood v. HSBC
Bank USA, N.A., et al* (pet. granted Oct. 9, 2015, oral argument
set for Dec. 8, 2015) ..................................................................................... x

      Issue 3: If Issues 1 or 2 are not granted, the portion of the
summary judgment order granting CU Member Mortgage's
counterclaim should be reversed because it did not have
standing to file that counterclaim ................................................................ x

      Issue 4: If the trial court's summary judgment order is only
partly reversed, for example if the foreclosure portion is

reversed but the limitations portion is affirmed, then this
court should vacate the trial court's attorney's fee order
and remand the case to the trial court for a determination
of which portion of appellees' attorney's fees are attributable
to the affirmed portion of the summary judgment order ............................. x

Statement of Facts ...................................................................................... 1

Summary of the Argument ......................................................................... 7

Argument and Authorities ......................................................................... 10

    Issue 1 ................................................................................................. 10

    Issue 2 ................................................................................................. 18

    Issue 3 ................................................................................................. 21

    Issue 4 ................................................................................................. 25

Conclusion and Prayer for Relief ............................................................. 26

Certificate of Service ................................................................................ 27

Certification of Word Count Compliance ................................................ 27

Appendix

July 14, 2014 Order Granting Motion for Summary Judgment Filed
by CU Members Mortgage, a Division of Colonial Savings, F.A. and
First Western Title Co. (CR 264-266)

March 2, 2015 Order Granting Motion for Award of Attorneys' Fees
by CU Members Mortgage, a Division of Colonial Savings, F.A. and
First Western Title Co. (CR 317-319)

March 12, 2015 Order Granting Bob Mims' Second Motion for
Summary Judgment (1st Supp. CR 4-5)

March 12, 2015 Order Denying Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File (1st Supp. CR 6)

June 3, 2015 Findings of Fact and Conclusions of Law on Motion for Award of Attorneys' Fees by CU Members Mortgage, a Division of Colonial Savings, F.A. (2nd Supp. CR 4-9)

## Index of Authorities

Cases

*Buck v. Palmer*, 381 S.W.3d 525 (Tex. 2012) ...................................................... 10

*Cassidy Commission Co. v. Security State Bank*,
333 S.W.2d 454 (Tex. Civ. App. – Houston 1960, no writ) .................................. 14

*Heckman v. Williamson County*, 369 S.W.3d 137 (Tex. 2012) ............................ 22

*Hoehn v. Dallas County MHMR*, No. 05-94-01515-CV,
1995 Tex. App. LEXIS 3406, 1995 WL 500271
(Tex. App. – Dallas Aug. 16, 1995, no writ)
(not designated for publication) ............................................................................ 14

*In re Estate of Hardesty*, 449 S.W.3d 895
(Tex. App. – Texarkana 2014, no pet.) .................................................................. 19

*Johnson v. City of Fort Worth*, No. 02-08-00369-CV
2009 Tex. App. LEXIS 2124
(Tex. App. – Fort Worth Mar. 26, 2009, no pet.) .................................................. 15

*McCord v. Dodds*, 69 S.W.3d 230
(Tex. App. – Corpus Christi 2001, pet. denied) .................................................... 15

*Montes v. Villarreal*, 281 S.W.3d 552
(Tex. App. – El Paso 2008, pet. denied) ........................................................... 16-18

*Priester v. JP Morgan Chase Bank, N.A.*,
708 F.3d 667 (5th Cir. 2013) .................................... ix, x, 3, 8, 9, 11, 18-21

*Proulx v. Wells*, 235 S.W.3d 213 (Tex. 2007) ............................................... 10, 11

*Rodriguez v. Tinsman & Houser, Inc.*,
13 S.W.3d 47 (Tex. App. – San Antonio 1999, pet. denied) ................................ 13

*Santiago v. Novastar Mortgage, Inc.*, 443 S.W.3d 462
(Tex. App. – Dallas 2014, pet. denied) .................................................................. 19

*Schanzle v. JPMC Specialty Mortgage, LLC*,
No. 03-09-00639-CV (Tex. App. – Austin 2011, no pet.)
(not designated for publication) ............................................................................. 5

*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
852 S.W.2d 440, 445 (Tex. 1993) ......................................................................... 22

*Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391
(Tex. App. – Dallas 2013, pet. denied) .................................................................. 19

*Wood v. HSBC Bank USA, N.A., et al*, 439 S.W.3d 585
(Tex. App. – Houston [14th Dist.] 2014, pet. granted Oct. 9, 2015) ...................... 19

*Wood v. HSBC Bank USA, N.A., et al*,
Tex. Sup. Ct. No. 14-0714 (pet. granted Oct. 9, 2015) ....... ix, x, 3, 8, 11, 18, 19, 21

*Wright v. JPMorgan Chase Bank, N.A.*, 169 So.3d 251
(Fla. App. [4th Dist.] July 1, 2015) ....................................................................... 25


Constitutional Provisions, Statutes and Rules

Tex. Civ. Prac. & Rem. Code § 16.051 .................................................................. 19

Tex. Const. art. XVI, § 50(a)(6) ......................................................................... 2, 12

Tex. Const. art. XVI, § 50(a)(6)(Q)(x) ............................................................... 2, 12

Tex. Prop. Code § 51.0001(3) ................................................................................ 24

Tex. Prop. Code § 51.0001(4)(C) .......................................................................... 23

Tex. Prop. Code § 51.0025 ..................................................................................... 23

Tex. R. App. P. 47.7(b) ........................................................................................... 15

vi

Tex. R. App. P. 9.4(i)(1) .................................................................................... 27

Tex. R. Civ. P. 166a(c) ............................................................................... 20, 21, 24

# No. 03-15-00339-CV

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

BEN MELTON,

Appellant

vs.

CU MEMBER'S MORTGAGE, a division of
COLONIAL SAVINGS, F.A., and FIRST WESTERN TITLE CO.

Appellees

On Appeal from the 340th District Court
of Tom Green County, Texas
Hon. Jay Weatherby Presiding
Trial Court Cause No. C103102C

Statement of the Case

This is an appeal from two orders: (1) a July 14, 2014 summary judgment and foreclosure order, Clerk's Record ("CR") 264-266, attached as appendix, granted in favor of appellees CU Member's Mortgage, a division of Colonial Savings, F.A. ("CU Member's") and First Western Title Co., and (2) a March 2, 2015 order awarding attorney's fees to both these appellees. CR 317-319, also attached as appendix. These orders became final and appealable on March 12,

2015, when the trial court signed orders disposing of all parties and claims. *See* Order Granting Bob Mims' Second Motion for Summary Judgment, 1st Supp. CR 4-5, and Order Denying Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File, 1st Supp. CR 6, included in this brief's appendix.

<u>Statement Regarding Oral Argument</u>

Although the panel assigned to hear this case may determine that the issues presented may be decided without oral argument, appellant's counsel requests argument because this court may have questions concerning: (1) whether appellant Ben Melton exercised due diligence in serving appellees with citation 61 days after suit was filed and limitations had expired, due to the Texas Constitution's requirement that a 60-day "right to cure" letter should first be served upon a home equity lender or note holder; (2) whether the residual four year statute of limitations should apply in suits concerning violations of the state constitutional home equity loan provisions, a question that was answered by the Fifth Circuit in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), with this reasoning questioned in briefing to the Supreme Court of Texas in No. 14-0714, *Wood v. HSBC Bank USA, N.A., et al* (pet. granted Oct. 9, 2015, oral argument set for Dec. 8, 2015), and (3) whether appellee CU Member's Mortgage had standing to bring a counterclaim for foreclosure or equitable subrogation due to breach of

ix

the note, when CU Member's Mortgage was not a party to the promissory note because the note was sold to Freddie Mac, and CU Member's Mortgage was neither the mortgagee nor the mortgage servicer, the only parties permitted to seek foreclosure under chapter 51 of the Texas Property Code.

Issues Presented

Issue 1: The trial court's summary judgment should be reversed because appellant exercised due diligence in serving citation when suit was filed four years after the home equity loan was signed, 60 days elapsed to provide appellees with an opportunity to cure, and appellees were served on day 61 after suit was filed.

Issue 2: If Issue 1 is not granted, the summary judgment order should be reversed because no statute of limitations applies in suits for constitutional violations of home equity loans. The Fifth Circuit incorrectly interpreted Texas state law on this subject in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), and the Texas Supreme Court has been asked to reject this holding in No. 14-0714, *Wood v. HSBC Bank USA, N.A., et al* (pet. granted Oct. 9, 2015, oral argument set for Dec. 8, 2015).

Issue 3: If Issues 1 or 2 are not granted, the portion of the summary judgment order granting CU Member Mortgage's counterclaim should be reversed because it did not have standing to file that counterclaim.

Issue 4: If the trial court's summary judgment order is only partly reversed, for example if the foreclosure portion is reversed but the limitations portion is affirmed, then this court should vacate the trial court's attorney's fee order and remand the case to the trial court for a determination of which portion of appellees' attorney's fees are attributable to the affirmed portion of the summary judgment order.

Statement of Facts

This appeal concerns a home equity loan for appellant Ben Melton's homestead which was signed on March 13, 2009, and financed by appellee CU Member's Mortgage. *See* CR 71-92: the home equity note and security instrument attached to appellees' motion for summary judgment. Mr. Melton made timely payments on this loan until he lost his job in 2012, and he began investigating possible ways to refinance the loan since the payments were becoming difficult to make. *See* Affidavit of Ben Melton, attached to his response to appellees' motion for summary judgment, at CR 209, ¶ 18. Melton discovered in 2012 that appellee CU Member's Mortgage may have violated the Texas Constitution when it closed his loan, and hired Mosser Law PLLC to represent him in this matter. CR 209-210, ¶¶ 19-25.

According to Mr. Melton's affidavit, Mosser Law PLLC served demand letters on CU Member's Mortgage on Monday, March 11, 2013, and filed suit on Wednesday, March 13, 2013, exactly four years after the home equity loan closed on March 13, 2009. CR 210, ¶¶ 26-27. *See also* Plaintiff's Original Petition at CR 6-10. The suit contended in part that both appellees violated certain provisions of the Texas Constitution's provision which created home equity loans for homesteads. CR 7-8, ¶¶ 8-11. Citations for both appellees were issued the next

1

day on March 14, 2013. CR 11 and 14. Both appellees were served on Monday, May 13, 2013, which was two months (or 61 days) after suit was filed on March 13, 2013. CR 13 and 16. Tex. Const. art. XVI, § 50(a)(6), contains a provision that requires that a 60-day notice letter be sent to the lender or holder of the home equity note in order to give the lender or holder of the note an opportunity to cure any loan defects and avoid forfeiture of all principal and interest. Tex. Const. art. XVI, § 50(a)(6)(Q)(x).[1] Plaintiff's Original Petition discussed this 60-day cure provision at CR 8, ¶ 12.

An original answer and first amended original answer were filed by both appellees, who were represented jointly by the same law firm. CR 17-24. Appellee CU Member's Mortgage filed its original counterclaim against appellant Ben Melton, seeking a foreclosure on the homestead for his failure to make payments on the home equity loan. CR 37-41. Appellee First Western Title Co. was not a party to this counterclaim. The counterclaim stated at ¶ 7:

> The Note was initially payable to CU Member's Mortgage. The initial beneficiary of the Deed of Trust was Mortgage Electronic

---

[1] "except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by [list of possible cure options omitted]." *Id.*

2

Registration Services, Inc. ("MERS"), as nominee for CU Member's Mortgage and its successors and assigns. The Note was later assigned to Freddie Mac, which retained Colonial Savings, F.A. as its servicing agent. CU Member's Mortgage is a division of Colonial Savings, F.A. This counterclaim is filed by Colonial as the servicing agent for Freddie Mac.

CR 38, ¶ 7. The counterclaim sought a judgment of foreclosure for failure to timely make note payments, and based upon equitable subrogation, since payments to prior lienholders of the homestead were made as part of the home equity loan. CR 39-40.

After appellant Melton filed his second amended original petition, which added additional causes of action, CR 42-48, both appellees CU Member's Mortgage and First Western Title Co. filed their combined motion for summary judgment. CR 49-176. The summary judgment motion argued in part that appellant's cause of action for constitutional violations was barred by the four year residual statute of limitations pursuant to the Fifth Circuit's holding in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013),[2] as well as two opinions of the Dallas court of appeals, and an unpublished opinion from the U.S. District Court for the Western District of Texas. CR 55. Since appellant filed suit

_____

[2] As mentioned earlier, the Supreme Court of Texas is being asked to reject the *Priester* reasoning in No. 14-0714, *Wood v. HSBC Bank, N.A., et al*. The petition for review was granted the same day that this brief was filed, with oral argument set for Dec. 8, 2015.

on the four-year anniversary of the closing of the home equity loan, but did not serve appellees until two months later, appellees argued that this showed a lack of due diligence in serving citation, justifying a grant of summary judgment based on the expiration of limitations. CR 55-57. The summary judgment motion also argued that CU Member's Mortgage (identified as "Colonial" in the motion) was "entitled to summary judgment on its claim for judicial foreclosure because [Melton] defaulted on the loan." CR 59-60 (quoted portion at CR 59, with bracketing added). The motion's prayer asked in part for summary judgment on all of Melton's claims against both appellees, summary judgment for CU Member Mortgage's counterclaim, a declaration that CU Member's Mortgage may foreclose on the property, and an order that CU Member's Mortgage may recover its attorney's fees as an obligation on the note and security instrument. CR 60-61.

Appellant Melton filed his response to the summary judgment, CR 177-217, and on that same date, he also filed his third amended petition, which added contentions concerning the discovery rule and affirmative defenses to appellee CU Member's Mortgage's counterclaim. CR 218-227. Both appellees filed a reply in support of their combined motion for summary judgment, CR 249-256, which in part cited several cases that appellees argued supported their argument that Mr. Melton did not exercise due diligence in serving them with citation. CR 254-255.

The reply also stated that the discovery rule was inapplicable because the date that limitations began to run was not when appellant learned of his injury in 2012, but the date the loan closed in March 2009, citing in part this court's opinion in *Schanzle v. JPMC Specialty Mortgage, LLC*, No. 03-09-00639-CV (Tex. App. – Austin 2011, no pet.) (not designated for publication).

The motion for summary judgment was heard January 10, 2014, and the argument from that hearing is at Reporter's Record ("RR") vol. 2. The trial court took the motion under advisement, RR vol. 2, p. 81, l. 10-11, and issued a May 12, 2014 letter ruling granting appellees' summary judgment motion. CR 262-263. The trial court signed its July 14, 2014 order granting the summary judgment motion on July 14, 2014. CR 264-266, included as appendix to this brief. This order also stated that the amount of appellees' attorney's fees to be awarded would be decided at a later date. CR 265.

Both appellees filed their combined motion for attorney's fees, CR 267-309, which was heard along with motions concerning other parties and claims, on January 7, 2015. The portion relevant to this appeal is at RR vol. 3. Both appellees also asked for severance, but then withdrew that request because the hearing disposed of all parties and claims. RR vol. 3, p. 5, l. 9-25. The trial court issued its February 20, 2015 letter ruling disposing of all parties and claims, CR

5

313-316, and awarding attorney's fees to both appellees in the amount of $18,396.00, with a further award of appellate attorney's fees of $10,000.00 "to respond to an unsuccessful appeal of the Court's judgment to the Court of Appeals[.]" CR 313-314 (quoted portion at CR 314, bracketing added).[3] However, the trial court's March 2, 2015 written order only awards attorney's fees to CU Member's Mortgage, not to First Western Title Co.[4] The order also stated that the attorney's fees would be "recovered from [Melton] as additional amounts owed on the Note [footnote describing note omitted] and Security Instrument [footnote describing that document omitted] at issue in this cause and not as a money judgment against [Melton.]" CR 317-318, quoted portion at CR 318 (bracketing added).

Ten days later, the trial court signed two written orders on March 12, 2015, which disposed of all parties and claims. Those orders are at 1st Supp. CR 4-6, and are included in this brief's appendix. On March 27, 2015, appellant Melton timely filed a request for findings of fact and conclusions of law concerning the attorney's

---

[3] An additional award of $10,000 if CU Member's Mortgage had to respond to an unsuccessful petition for review to the Texas Supreme Court was also included. CR 314.

[4] The title of the order states that it is granting the motion for attorney's fees filed by both appellees, but the text of the order only awards attorney's fees to appellee CU Member's Mortgage. CR 317-318, attached as appendix.

fees order.  CR 324-325.  The trial court's June 3, 2015 findings and conclusions on this subject are at 2nd Supp. CR 4-9, attached as appendix.  Appellant also filed a motion for new trial on April 1, 2015, CR 327-330, which was overruled by operation of law.  Mr. Melton then timely filed his notice of appeal on June 1, 2015.  CR 346-347.

## Summary of the Argument

The trial court's summary judgment order should be reversed because Mr. Melton exercised due diligence in serving citation 61 days after suit was filed on the four year anniversary of the date the home equity loan was signed.  An ordinary, prudent person under similar circumstances would have served a 60 day notice to cure letter upon appellees, as required by the Texas Constitution, and then served appellees on day 61 once cure was not made.  The focus on this issue is not merely how much time elapsed between the time suit was filed when limitations is about to expire and when service of citation occurred.  The courts must also look at whether the plaintiff acted negligently or was dilatory in serving citation when suit is filed before limitations expires, and citation was served after limitations elapsed.  In the case at bar, appellant Melton filed suit on the four year anniversary of the date the home equity loan was signed, but also served appellees with a "right to cure" letter and waited the 60 day period contained in the Texas Constitution for

appellees to cure the defects noted in the lawsuit. When cure was not made after that time, appellees were served on day 61 after suit was filed. Appellant exercised due diligence in serving citation, and the trial court's summary judgment order should be reversed.

If this court does not agree that appellant exercised due diligence in serving citation, then this court should reverse the trial court's summary judgment because there is no statute of limitations that applies to constitutional claims for violations of the home equity loan constitutional provision. The Fifth Circuit held in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), that because the constitution was later amended to allow lenders and holders of home equity notes an opportunity to cure any defects before suit is filed, this meant that the four year residual statute of limitations should apply. However, the Texas Supreme Court has been asked to reject this holding in No. 14-0714, *Wood v. HSBC Bank USA, N.A., et al*. The court granted the petition for review on Oct. 9, 2015, and oral argument is set for Dec. 8, 2015. If the Texas Supreme Court rejects *Priester* and holds that no statute of limitations applies, then this court should reverse the trial court's summary judgment order on that basis. If the Texas Supreme Court holds in a different manner that may still afford appellant relief on this appeal, this court should permit supplemental briefing. Finally, since the Texas Constitution created

8

home equity loans and contains no limitations provision, this court should reject the *Priester* reasoning and hold that there is no statute of limitations applicable to claims for constitutional violations of the home equity loan provisions.

If this court affirms the trial court's summary judgment order on limitations grounds, the portion of the court's order granting CU Member's summary judgment on its counterclaim should be reversed because CU Member's Mortgage lacked standing to bring its counterclaim seeking foreclosure for failure to make timely payments on the home equity loan, and based upon equitable subrogation. Standing may be raised for the first time of appeal since it is a component of the court's subject matter jurisdiction, and a court cannot grant relief if it does not have subject matter jurisdiction. CU Member's Mortgage was not the holder of the promissory note, as it had sold the note to Freddie Mac; therefore, it could not sue for breach of the note, only Freddie Mac could. The Texas Property Code permits a Mortgagee or a Mortgage Servicer to seek foreclosure, but CU Member's Mortgage is neither of those entities, nor is there any summary judgment evidence proving that it is a Mortgagee or Mortgage Servicer. The summary judgment order granting the foreclosure counterclaim based upon breach of the note by failing to timely make payments and equitable subrogation should be reversed for lack of standing.

9

Finally, if this appeal is reversed in part and affirmed in part, this court should vacate the order awarding attorney's fees to CU Member's Mortgage, and remand to the trial court for a hearing to determine which portion of the attorney's fees are attributable to the part of the summary judgment order that is affirmed.

<u>Argument and Authorities</u>

> Issue 1: The trial court's summary judgment should be reversed because appellant exercised due diligence in serving citation when suit was filed four years after the home equity loan was signed, 60 days elapsed to provide appellees with an opportunity to cure, and appellees were served on day 61 after suit was filed.

This court reviews a trial court's summary judgment *de novo*. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). In doing so, the reviewing court must determine whether there is more than a scintilla of probative evidence that raises genuine issues of material fact. *Id.* Additionally, the record is reviewed in the light most favorable to the nonmoving party, and the court indulges every reasonable inference and resolves any doubt against the movant. *Ibid.*

The timely filing of a lawsuit does not toll the statute of limitations unless the plaintiff exercises due diligence in effective service of citation upon the defendant. *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). If service is diligently effected after limitations has expired, the date of service will related back to the date of filing. *Id.* In assessing diligence, the relevant inquiry is

10

whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances, and whether the plaintiff was diligent up until the time the defendant was served. *Id.*, 235 S.W.3d at 216. Generally, the question of the plaintiff's diligence in effecting service is one of fact, and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service. *Ibid.* Once a defendant has affirmatively pled the defense of limitations and shown that service was obtained after limitations expired, the burden shifts to the plaintiff to explain the delay. *Ibid.*[5]

The parties in their summary judgment pleadings focused on the length of time it took between filing suit and service of citation on the defendant, but that is not the only inquiry in assessing due diligence. Not only must the amount of time between filing of suit and service upon the defendant be considered, but also whether the plaintiff was dilatory during that time. As noted earlier in this brief,

---

[5] For this issue, appellant will assume that there is a four year statute of limitations applicable to his suit for constitutional violations of the home equity provisions. If this court grants this issue and holds that Mr. Melton exercised due diligence in effecting service on day 61 after suit was filed, then this court does not have to decide the second issue concerning whether the Fifth Circuit in *Priester* incorrectly held that the four year residual statute of limitations applied, a question that is pending before the Texas Supreme Court in No. 14-0714; *Wood v. HSBC Bank, N.A., et al.*, with oral argument set for Dec. 8, 2015.

Tex. Const. art. XVI, § 50(a)(6), contains a provision that requires that a 60 day notice letter be sent to the lender or holder of the home equity note in order to give the lender or holder of the note an opportunity to cure any loan defects and avoid forfeiture of all principal and interest. Tex. Const. art. XVI, § 50(a)(6)(Q)(x).[6] In the case at bar, appellant Ben Melton did exercise due diligence in serving citation because he filed suit on March 13, 2013, the four year anniversary of the date the note was signed (March 13, 2009), his attorneys mailed the 60 day notice of cure letter to CU Member's Mortgage on March 11, 2009,[7] and when no cure occurred after 60 days had elapsed, Mr. Melton served both appellees the next day – day 61 after suit was filed. Contrary to being dilatory or negligent, appellant Melton was diligent in waiting 60 days after suit was filed to give CU Member's Mortgage an opportunity to cure, and diligent in serving them appellees the next day – day 61 after suit was filed.

---

[6] "except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by [list of possible cure options omitted]." *Id.*

[7] *See* Melton's affidavit attached to his response to appellees' motion for summary judgment, at CR 210, ¶ 26.

Appellees argued below that because the state constitution's provision requiring that a 60 day notice of cure letter be sent before suit was filed did not contain any language tolling limitations, that this was a mistake of law by Mr. Melton which showed that he was not diligent in serving citation. In essence, appellees are trying to punish appellant for being too diligent or too careful in serving his 60 day notice to cure letter and waiting to serve citation until day 61.

Appellee's summary judgment motion cited *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47 (Tex. App. – San Antonio 1999, pet. denied), CR 56-57, to support its claim of lack of due diligence, but it is distinguishable because in that case, suit was filed on July 3, 1997, eleven days before limitations would elapse on July 14, and plaintiff instructed the clerk not to issue citation because plaintiff was going send correspondence to defendant's attorney seeking a waiver of citation. *Id.* at 48-49. When plaintiff discovered that this correspondence was never sent to defendant's attorney, plaintiff requested issuance of citation on July 31, 1997 (17 days after limitations expired on July 14), and defendant was served on August 8, 1997. *Id.* at 48. The Fourth Court held that this amounted to lack of diligence in effecting service as a matter of law because in this case, citation was not timely issued before limitations expired, and it was undisputed that no steps were taken to effect service until after limitations had expired. *Id.*, at 51. But in

13

the case at bar, citation was issued the same day suit was filed, and service was delayed to await the expiration of the 60 day cure period mandated by the state constitution. Appellees were served 61 days after suit was filed, and that should constitute due diligence as a matter of law, since service occurred the day after the 60 day cure period elapsed.

Appellant cited in his response to the summary judgment motion, CR 194, the case of *Cassidy Commission Co. v. Security State Bank*, 333 S.W.2d 454 (Tex. Civ. App. – Houston 1960, no writ). Suit was filed on Oct. 31, 1956, and citation was issued that same day, but it was not served until Jan. 4, 1957. *Id.*, at 456. The trial court held that service had been timely made, and the Houston court affirmed. *Id.*, at 457.

In their reply, appellees cited cases involving mistakenly serving the wrong governmental official as support for their theory that Melton's mistaken belief that he had to wait 60 days to serve citation because the state constitution requires a 60 day cure letter be sent to appellees before suit is filed was a lack of due diligence in effecting service. CR 255. However, one of these cases, *Hoehn v. Dallas County MHMR*, No. 05-94-01515-CV, 1995 Tex. App. LEXIS 3406, 1995 WL 500271, at *3 (Tex. App. – Dallas Aug. 16, 1995, no writ) (not designated for publication), has no precedential value, because it is a civil appellate opinion that was issued

14

before January 1, 2003. Tex. R. App. P. 47.7(b). The other case, *Johnson v. City of Fort Worth*, No. 02-08-00369-CV, 2009 Tex. App. LEXIS 2124, at *9 (Tex. App. – Fort Worth Mar. 26, 2009, no pet.), is distinguishable. Suit was filed on Nov. 7, 2007 (after a "right to sue letter" had been served on Sept. 10, 2007), the wrong governmental official was served, and the correct official was not served until Jan. 2, 2008. The Second Court held that serving the wrong governmental official showed a lack of due diligence by plaintiff in timely effecting service. In the case at bar, the correct entities were served, and the delay in service was only to permit the 60 day cure period run before proceeding further with the suit. Service was effected on day 61, so this cannot constitute lack of due diligence in serving citation.

Another case cited by appellees in their reply, *McCord v. Dodds*, 69 S.W.3d 230, 234 (Tex. App. – Corpus Christi 2001, pet. denied), CR 254-255, is distinguishable because in that case, the wrong defendant was sued and served citation, and plaintiff's attorney could have discovered this error if discovery responses had been reviewed four months earlier, which showed a lack of diligence in effecting service upon the proper defendant. *Id.* There is no showing in this case of negligence or lack of due dilgence of four months. Once 60 days after suit was filed had elapsed, meaning that appellant had complied with the constitution's

15

requirement that a 60 day time period to permit appellees to cure had run, the appellees were served on day 61, the very next day.

Appellant's research has revealed another case that while on its face may support appellees' position that Mr. Melton did not exercise due diligence because he mistakenly believed he had to wait 60 days after suit was filed to permit appellees an opportunity to cure before he could serve appellees, it is actually distinguishable. *Montes v. Villarreal*, 281 S.W.3d 552 (Tex. App. – El Paso 2008, pet. denied), concerned a medical malpractice action in which the plaintiff served a statutory notice letter and medical authorization upon the defendant doctor one day before the two year statute of limitations expired. *Id.*, at 554. Under the applicable statute, this tolled the statute of limitations for an additional 75 days, suit was filed against the hospital and doctor on May 25, 2005, an amended petition was then filed on Sept. 22, 2005, dropping the hospital as a defendant, citation for the doctor was issued on Sept. 27 and the doctor was served on Oct. 4, 2005. *Ibid.* The doctor sought summary judgment on limitations grounds based on lack of due diligence in service, and plaintiff filed a response attempting to explain the four month and nine day delay in serving citation, explaining that plaintiff thought that issuing citation within the 60 day abatement period would violate that statute, and

16

because plaintiff's attorney was waiting on an expert report on whether the hospital exercised its duty of care. *Id.*, at 554-556.

The Eighth Court held that plaintiff's attorney's explanation was not sufficient to show exercise of due diligence in serving citation four months after limitations had expired. The court held that the attorney was mistaken in believing that there was a 60 day abatement period because that period only applied when a plaintiff failed to provide a written medical authorization with a notice of health care claim, and in this case, plaintiff's attorney had supplied both documents to the doctor. *Id.*, at 556-557. Therefore, this was an insufficient explanation for the delay in issuing citation.

However, in the case at bar, there was no delay in issuing citation, which was done the same day suit was filed. CR 11 and 14.[8] Additionally, while the Eighth Court's holding that the attorney's mistaken belief that a 60 day abatement period applied to require a delay in issuing citation, when it did not, may seem to support appellees' position, it does not. This is because if appellant's compliance with the state constitution's 60 day cure period is interpreted as a misunderstanding of the law, the fact remains that only one day elapsed between that time period

---

[8]     The Eighth Court also discussed why the attorney's explanation as to why he delayed issuing citation and serving the hospital. *Id.*, at 557-558. This writer does not believe that discussion is relevant to this appeal.

17

running and service of citation being completed. In *Montes*, *supra*, there was a four month delay, which showed a lack of diligence.

Appellant Ben Melton timely filed suit before limitations expired, his attorneys sent letters requesting cure within 60 days (as required by the state constitution), and when cure was not made, the appellees were served on day 61 after suit was filed. This one day delay cannot be considered lack of due diligence in serving citation. This court should reverse the trial court's summary judgment, and hold that appellant exercised due diligence as a matter of law.

> Issue 2: If Issue 1 is not granted, the summary judgment order should be reversed because no statute of limitations applies in suits for constitutional violations of home equity loans. The Fifth Circuit incorrectly interpreted Texas state law on this subject in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013), and the Texas Supreme Court has been asked to reject this holding in No. 14-0714, *Wood v. HSBC Bank USA, N.A., et al* (pet. granted Oct. 9, 2015, oral argument set for Dec. 8, 2015).

The first paragraph from the previous issue discussing the standard of review for summary judgment appeals is incorporated by reference in this issue. Appellees' summary judgment motion asked the trial court to follow the reasoning of the Fifth Circuit in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013), which held that the four year residual statute of limitations

18

contained in Tex. Civ. Prac. & Rem. Code § 16.051,[9] applied to suits by homestead owners for violations of the Texas constitutional provision creating home equity loans. CR 55. While some Texas intermediate appellate courts have adopted Priester's reasoning, *e.g., Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 395-397 (Tex. App. – Dallas 2013, pet. denied); *Santiago v. Novastar Mortgage, Inc.*, 443 S.W.3d 462, 473 (Tex. App. – Dallas 2014, pet. denied); and *In re Estate of Hardesty*, 449 S.W.3d 895, 908-911 (Tex. App. – Texarkana 2014, no pet.), the Texas Supreme Court has not yet ruled on this issue. However, whether the Supreme Court will adopt or reject *Priester* may be decided in *Wood v. HSBC Bank, N.A., et al*, No. 14-0714 (pet. granted Oct. 9, 2015, oral argument set for Dec. 8, 2015).[10]

Since the Texas Supreme Court has granted review in *Wood*, that opinion will decide whether the four year residual statute of limitations applies in these cases, as *Priester* held, whether no statute of limitations applies, as the petitioner in *Wood* contends, or whether another rule will be created in that opinion. Rather

---

[9]     "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."

[10]    The portion of the Houston [14th Dist.] court's *Wood* opinion discussing the *Priester* reasoning is at 439 S.W.3d 585, 589-594 (Tex. App. – Houston [14th Dist.] 2014, pet. granted Oct. 9, 2015, oral argument set for Dec. 8, 2015).

19

than "re-invent the wheel" by rebriefing the issues raised by appellant at pages 3-16 of his response to the motion for summary judgment, CR 179-192, this writer incorporates by reference the arguments and authorities presented to the trial court at the summary judgment stage, summarized as follows:

- there is no statute of limitations for void liens (CR 179-182);

- the Fifth Circuit amended (or incorrectly interpreted) the Texas Constitution (CR 182-185);

- the Fifth Circuit created a statute of limitations by holding that the residual statute of limitations applies in these cases (CR 185-187);

- the Fifth Circuit misinterpreted Texas state law by relying on dicta instead of holdings (CR 187-188);

- the Fifth Circuit's *Priester* opinion is an abrogation of the homestead protection, when all that the cure provision was intended to do was to give lenders an opportunity to change their void loans into invalid loans within a reasonable time (CR 188-190); and

- a void act could be validated in Texas, and the Fifth Circuit's holding in *Priester* that something that is once void is always void was incorrect (CR-190-192).

Since a ground for reversal of a summary judgment must be contained in the summary judgment pleadings, Tex. R. Civ. P. 166a(c), "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal[,]" the issue has already been briefed in the trial court below, and the Texas Supreme Court may change the law in this

20

area if it grants review, appellant relies on the briefing in the trial court below, but will ask for leave to file supplemental briefing on this issue if the Texas Supreme Court grants the petition for review in *Wood* and issues an opinion while this appeal remains pending.

Because appellant believes that the Fifth Circuit in *Priester* incorrectly held that the four year residual statute of limitations applies for the reasons stated in the appellant's response to the motion for summary judgment, and the Texas Supreme Court may issue an opinion in *Wood* rejecting the *Priester* holding just discussed, appellant asks that this court reverse the summary judgment order, either based on the opinion that will be issued in *Wood*, or based on the arguments and authorities in appellant's summary judgment response that no statute of limitations applies in suits for violations of the state constitution's provision prescribing the procedures for creating home equity loans.

> Issue 3: If Issues 1 or 2 are not granted, the portion of the summary judgment order granting CU Member Mortgage's counterclaim should be reversed because it did not have standing to file that counterclaim.

Normally, a claim or defense that was not discussed in the summary judgment pleadings cannot be ground for reversal by an appellate court. See Tex. R. Civ. P. 166a(c), "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for

21

reversal." However, the question of a party's standing to file suit for the claims for which it sought summary judgment may be raised for the first time on appeal and cannot be waived since standing is a component of the court's subject matter jurisdiction to hear a case. "Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (footnotes omitted). "Because we conclude that standing is a component of subject matter jurisdiction, it cannot be waived and may be raised for the first time on appeal." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).

The counterclaim seeking foreclosure for breach of the promissory note and equitable subrogation was filed by only by appellee CU Member's Mortgage. CR 37-41. Thus, appellee First Western Title Co. is not a party to the counterclaim. Appellee CU Member's Mortgage did not have standing to bring its counterclaim seeking judicial foreclosure based on plaintiff's default on the note, CR 37-41, and it failed to produce summary judgment showing that it had standing. CU Member's Mortgage discussed the elements of a breach of contract claim in its summary judgment motion and attempted to apply it to the note on Mr. Melton's

22

homestead. CR 59-60 (motion for summary judgment, ¶ 5). However, as the summary judgment affidavit of Amily Sauceda, Assistant Vice President of Colonial Savings, F.A. (a non-party to this litigation), states at ¶ 6, "The Note was granted, sold, assigned, transferred, and conveyed by CU Members Mortgage to Freddie Mac on May 12, 2009. Freddie Mac is the current owner and holder of the Note." CR 66. It is axiomatic that a non-party to a contract does not have standing to sue for breach of that contract. Therefore, since CU Member's Mortgage is not a party to the note, it cannot sue for breach of that note.

CU Member's Mortgage's summary judgment motion correctly points out that a default in the Note can give rise to a right to foreclose defined in the Deed of Trust: "Pursuant to the Security Instrument, Colonial may foreclose on the Property in the event there is a default in the payment obligations on the Note." CR 60. This foreclosure can be administered by either the Mortgagee or the Mortgage Servicer. Tex. Prop. Code § 51.0025. However, CU Member's Mortgage is neither the Mortgagee nor the Mortgage Servicer.

The Mortgagee is Colonial Savings, F.A. *See* Tex. Prop. Code § 51.0001(4)(C) (defining Mortgagee as "the last person to whom the security interest has been assigned of record"). *See also* Amily Sauceda's summary judgment affidavit, CR 66, ¶ 7: "The Deed of Trust was assigned, transferred, and

conveyed by MERS to Colonial Savings FA, as reflected in that certain Assignment of Deed of Trust . . . ."  The Mortgage Servicer is defined by Tex. Prop. Code § 51.0001(3) as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument.  A mortgagee may be the mortgage servicer."

As the movant for summary judgment, CU Member's Mortgage had the burden to prove its counterclaims for foreclosure and equitable subrogation based upon nonpayment of the Note.  *See* Tex. R. Civ. P. 166a(c): "The judgment sought shall be rendered forthwith if [the summary judgment evidence] show[s] that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. . . ."  Appellees produced no summary judgment evidence to show that the Mortgagor (appellant Melton), was instructed to send payments to CU Member's Mortgage by the current mortgagee.  In fact, Colonial Savings, F.A. claimed to be the Mortgage Servicer.  Affidavit of Amily Sauceda, CR 66, ¶ 7.

Recently, the Florida Fourth District Court of Appeal reversed a summary judgment awarded to a lender for its failure to produce summary judgment that it had standing to bring the foreclosure action, and dismissed the foreclosure on the

24

mortgage for failure to prove standing. *See Wright v. JPMorgan Chase Bank, N.A.*, 169 So.3d 251-252 (Fla. App. [4th Dist.] July 1, 2015). The same result should occur in the case at bar. CU Member's Mortgage is neither the Mortgagee nor the Mortgage Servicer, as defined by the Texas Property Code provisions discussed above, and it failed to produce summary judgment evidence proving that it had either status. Furthermore, since CU Member's Mortgage is not the owner or holder of the Note, it does not have standing for the claim of equitable subrogation pleaded in its counterclaim at CR 39-40. The owner of the Note, Freddie Mac, is the only entity that can sue on the Note.

For these reasons, this court should sustain Issue 3, hold that appellee CU Member's Mortgage did not prove that it had standing to bring the counterclaim for foreclosure based on failure to timely make Note payments, and for equitable subrogation, reverse the summary judgment order on this basis, and vacate the portion of the trial court's orders granting foreclosure.

> Issue 4: If the trial court's summary judgment order is only partly reversed, for example if the foreclosure portion is reversed but the limitations portion is affirmed, then this court should vacate the trial court's attorney's fee order and remand the case to the trial court for a determination of which portion of appellees' attorney's fees are attributable to the affirmed portion of the summary judgment order.

The trial court issued an order granting the appellees' motion for attorney's fees. CR 317-319. If this case is reversed on Issues 1 or 2, the attorney's fee order

25

should be vacated since the entire case would be remanded to the trial court for further proceedings. However, if this court finds that limitations is a bar to appellant's suit on the home equity loan constitutional violations, but reverses the foreclosure-equitable subrogation-breach of the note counterclaim portion of the summary judgment, then this court should vacate the attorney's fee award and remand to the trial court for a hearing to determine which portion of appellees' attorney's fees are attributable to the affirmed portion of the case concerning limitations, and which portion should be deleted as being attributable to the reversed portion of the summary judgment order concerning foreclosure-equitable subrogation-breach of the note counterclaim.

Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, appellant Ben Melton prays that this court reverse the trial court's order granting summary judgment and order for attorney's fees. If this court affirms in part and reverses in part, appellant prays that this court vacate the order for attorney's fees and remand to the trial court for a determination of what portion of attorney's fees are attributable to the portion of this appeal that this court affirms. Appellant Ben Melton also prays for his costs of court, both in this court and in the court below, and for general relief.

Respectfully submitted,


/s/ *Gregory Sherwood*


GREGORY SHERWOOD
Attorney at Law
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
State Bar No. 18254600
Email: gsherwood@mail.com


Attorney on Appeal
for Appellant Ben Melton


## Certificate of Service

I hereby certify that a true copy of this document was served on October 9, 2015, either by e-service through the State electronic filing service provider, or by email sent by undersigned counsel, upon the attorney for appellees in this appeal: Mark Cronenwett, Mackie Wolf, Zientz & Mann, PC, 14150 N. Dallas Parkway, Suite 900, Dallas, Texas 75254, email: mcronenwett@mwzmlaw.com.


/s/ *Gregory Sherwood*


## Certification of Word Count Compliance

According to the WordPerfect program used to create this document, there are 6,531 words in this brief, excluding the portions listed in Tex. R. App. P. 9.4(i)(1).


/s/ *Gregory Sherwood*

# APPENDIX

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT BY CU MEMBERS MORTGAGE, A
DIVISION OF COLONIAL SAVINGS, F.A. AND
FIRST WESTERN TITLE CO.
- signed July 14, 2014 (CR 264-266)

| | | |
|---|---|---|
| BEN MELTON,<br>        Plaintiff, | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| CU MEMBERS MORTGAGE, A<br>DIVISION OF COLONIAL SAVINGS,<br>F.A., FIRST WESTERN TITLE CO.,<br>AND BOB MIMS,<br>        Defendants. | §<br>§<br>§<br>§<br>§ | |
| | § | 340th JUDICIAL DISTRICT |
| CU MEMBERS MORTGAGE, A<br>DIVISION OF COLONIAL SAVINGS,<br>F.A.,<br>        Defendant/Counter-Plaintiff, | §<br>§<br>§<br>§ | |
| v. | § | |
| BEN MELTON,<br>        Plaintiff/Counter-Defendant. | §<br>§ | OF TOM GREEN COUNTY, TEXAS |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO.

**CAME ON TO BE HEARD** the Motion for Summary Judgment filed in this cause by Defendant/Counter-Plaintiff CU Members Mortgage, a division of Colonial Savings, F.A. ("CU Members Mortgage" or "Colonial"), and Defendant First Western Title Co. ("First Western", together with CU Members Mortgage, "Defendants"). After consideration of the Motion, the proper summary judgment evidence, any responses and replies thereto on file, and the arguments of counsel, the Court is of the opinion that the Motion should be, and hereby is, granted in its entirety. It is, therefore,

**ORDERED, ADJUDGED AND DECREED** that Defendants' Objection to the Affidavit of Tracy Smith Law is sustained; and it is further

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO.–Page 1

264

**ORDERED, ADJUDGED AND DECREED** that Plaintiff Ben Melton ("Plaintiff") takes nothing on his claims against Defendants as pleaded in Plaintiff's Third Amended Petition; and it is further

**ORDERED, ADJUDGED AND DECREED** that Plaintiff is in default on his payment obligations on the Note[1] and Security Instrument[2] at issue in this cause; and it is further

**ORDERED, ADJUDGED AND DECREED** that Colonial may foreclose on the Security Instrument that is at issue in this cause through a foreclosure sale of the Property at issue in this cause[3]; and it is further

**ORDERED, ADJUDGED AND DECREED** that an order of sale shall issue to any sheriff or any constable of the State of Texas, directing him or her to seize and sell the Property, and the improvements located thereon, as under execution and satisfaction of this Judgment.

**ORDERED, ADJUDGED AND DECREED** that Colonial shall recover its attorney's fees and costs from Plaintiff as an amount due on the Note and secured by the Security Instrument in an amount to be determined at a later date.

**SIGNED** this _14th_ day of _July_____, 2014.

_____
HON. JAY WEATHERBY
JUDGE PRESIDING

---

[1] That certain Texas Home Equity Note (Fixed Rate – First Lien) signed by Plaintiff on or about March 13, 2009 in the amount of $223,648.00 and initially payable to CU Members Mortgage, a Division of Colonial Saving, FA.

[2] That certain Texas Home Equity Security Instrument (First Lien) signed by Plaintiff on or about March 13, 2009 and that is recorded in the Tom Green County Real Property Records on April 14, 2009 as Instrument No. 667855.

[3] Described as: LOT FOURTEEN-A (14-A), BLOCK ONE (1), OF SECTION TWO (2), GROUP 1, LAKE NASWORTHY ADDITION TO THE CITY OF SAN ANGELO, TOM GREEN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET "E", SLIDE #167, OF THE PLAT RECORDS OF TOM GREEN COUNTY, TEXAS. and is commonly known as 1969 BEATY ROAD, SAN ANGELO, TEXAS 76904 ("the Property").

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO.–Page 2

APPROVED AS TO FORM ONLY BY:


_/s/ Mark D. Cronenwett_
Mark D. Cronenwett
Mackie Wolf Zientz & Mann, PC
14160 N. Dallas Parkway, Suite 900
Dallas, TX 75254
COUNSEL FOR DEFENDANT/COUNTER-PLAINTIFF
CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A.
AND DEFENDANT FIRST WESTERN TITLE CO.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY CU MEMBERS MORTGAGE, A
DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO.–Page 3

266

ORDER GRANTING MOTION FOR AWARD OF
ATTORNEYS' FEES BY CU MEMBERS
MORTGAGE, A DIVISION OF COLONIAL
SAVINGS, F.A. AND FIRST WESTERN TITLE CO.
- signed March 2, 2015 (CR 317-319)

CAUSE NO. C-1-30102-C

| | | |
|---|---|---|
| BEN MELTON, Plaintiff, | § § § | IN THE DISTRICT COURT |
| v. | § § | |
| CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A., FIRST WESTERN TITLE CO., AND BOB MIMS, Defendants. | § § § § § § | |
| | § § | 340th JUDICIAL DISTRICT |
| CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A., Defendant/Counter-Plaintiff, | § § § § § § | |
| v. | § § § | |
| BEN MELTON, Plaintiff/Counter-Defendant. | § § | OF TOM GREEN COUNTY, TEXAS |

### ORDER GRANTING
### MOTION FOR AWARD OF ATTORNEYS' FEES
### BY CU MEMBERS MORTGAGE, A DIVISION OF
### COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO.

**CAME ON TO BE HEARD** the Motion for Award of Attorneys' Fees ("the Motion") filed by CU Members Mortgage, a Division of Colonial Savings, F.A. and First Western Title Co. ("CU Members Mortgage" or "Colonial"), and Defendant First Western Title Co. ("First Western", together with CU Members Mortgage, "Defendants"). After consideration of the Motion, the evidence, the professed lack of opposition to the Motion by counsel for Plaintiff Ben Melton ("Plaintiff") at the January 7, 2015 hearing, and the argument of counsel, the Court is of the opinion that the Motion should be, and hereby is, granted. It is, therefore,

**ORDERED, ADJUDGED AND DECREED** that CU Members Mortgage shall have and recover from Plaintiff a judgment of attorneys' fees and expenses in the amount of

ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE. A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO..–
Page 1

$18,396.00; plus another $10,000.00 to respond to an unsuccessful appeal of the Court's judgment in this cause to the Court of Appeals; plus another $10,000.00 to respond to an unsuccessful petition for review to the Texas Supreme Court, with said sums to be recovered from Plaintiff as additional amounts owed on the Note[1] and Security Instrument[2] at issue in this cause and not as a money judgment against Plaintiff; and it is further

**ORDERED, ADJUDGED AND DECREED** that this Order and the Court's July 14, 2014 Order Granting Motion for Summary Judgment by CU Members Mortgage, a Division of Colonial Savings, F.A., and First Western Title Co. together constitute a judgment that fully and finally disposes of all claims asserted by and between Plaintiff and these Defendants; and it is further

**ORDERED, ADJUDGED AND DECREED** that costs incurred by Defendants in this cause are taxed against Plaintiff. Let all writs, orders and processes issue for the enforcement and execution of the instant Order and the Court's July 14, 2014 Order Granting Defendants' Motion for Summary Judgment.

SIGNED this _2nd_ day of _March_, 2015.

HON. JAY WEATHERBY
**JUDGE PRESIDING**

---

[1] That certain Texas Home Equity Note (Fixed Rate – First Lien) signed by Plaintiff on or about March 13, 2009 in the amount of $223,648.00 and initially payable to CU Members Mortgage, a Division of Colonial Saving, FA.

[2] That certain Texas Home Equity Security Instrument (First Lien) signed by Plaintiff on or about March 13, 2009 and that is recorded in the Tom Green County Real Property Records on April 14, 2009 as Instrument No. 667855.

ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO..- Page 2

318

APPROVED AS TO FORM:

_/s/ Mark D. Cronenwett_
Mark D. Cronenwett
SBN 00787303
214-635-2650 (Phone)
214-635-2686 (Fax)
Mackie Wolf Zientz & Mann, PC
14160 N. Dallas Parkway, Suite 900
Dallas, TX 75254
COUNSEL FOR DEFENDANTS

ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. AND FIRST WESTERN TITLE CO..- Page 3

319

ORDER GRANTING BOB MIMS' SECOND MOTION
FOR SUMMARY JUDGMENT - signed March 12, 2015
(1st Supp. CR 4-5)

| | | |
|---|---|---|
| BEN MELTON | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | |
| | § | |
| | § | |
| CU MEMBER'S MORTGAGE | § | 340TH JUDICIAL DISTRICT |
| A DIVISION OF COLONIAL SAVINGS, F.A | § | |
| FIRST WESTERN TITLE CO. AND | § | |
| BOB MIMS | § | TOM GREEN COUNTY, TEXAS |

## ORDER GRANTING BOB MIMS' SECOND MOTION FOR SUMMARY JUDGMENT

On July 1, 2014, the Court considered by submission Bob Mims' Second Motion for Summary Judgment. After considering the pleadings on file and the summary judgment evidence timely filed and properly submitted for consideration, the Court finds that Bob Mims' Second Motion for Summary Judgment should be in all things granted.

Prior to signing this Order, the Court heard and considered Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File, and denied that motion by a separate order (said separate order being hereby incorporated and affirmed). The Court also considered, but did not rule on Bob Mims' Objections to Summary Judgment Evidence in Plaintiff's Response to Bob Mims' Second Motion for Summary Judgment, for the reason that those objections are moot as a result of the denial of Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File.

In connection with the entry of this Order, and to make this Order a final order that disposes of all pending claims and causes of action asserted by or against Bob Mims, the Court finds that prior to signing this Order Granting Bob Mims' Second Motion for Summary Judgment the Court has signed and entered the following orders in this cause (said prior orders being hereby incorporated and affirmed):

-1-

4

1. Order Granting Bob Mims' Motion for Summary Judgment (Bob Mims' First Motion for Summary Judgment); and

2. Order Granting Bob Mims' First Amended Motion for Sanctions.

The Court further finds that the granting of Bob Mims' Second Motion for Summary Judgment will dispose of all pending claims and causes of action asserted by or against Bob Mims.

It is, accordingly, ORDERED that Bob Mims' Second Motion for Summary Judgment is in all things GRANTED.

It is further ORDERED that all cost of court incurred by Bob Mims are taxed against Plaintiff, Ben Melton.

It is further ORDERED, ADJUDGED and DECREED that any and all relief requested by or against Bob Mims that has not been specifically granted is refused and denied.

Signed this _____ *12th* _____ day of March, 2015.

_____
DISTRICT JUDGE PRESIDING

ORDER DENYING BEN MELTON'S MOTION TO CORRECT FILING DATE, OR IN THE ALTERNATIVE FOR LEAVE TO FILE - signed March 12, 2015 (1st Supp. CR 6)

CAUSE NO. C130102C

| | | |
|---|---|---|
| BEN MELTON | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | |
| | § | |
| CU MEMBER'S MORTGAGE | § | 340TH JUDICIAL DISTRICT |
| A DIVISION OF COLONIAL SAVINGS, F.A | § | |
| FIRST WESTERN TITLE CO. AND | § | |
| BOB MIMS | § | TOM GREEN COUNTY, TEXAS |

## ORDER DENYING BEN MELTON'S MOTION TO CORRECT FILING DATE, OR IN THE ALTERNATIVE FOR LEAVE TO FILE

On January 22, 2015, the Court heard and considered Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File. After considering the pleadings on file, the evidence admitted during the hearing, and argument of counsel the Court finds that the Motion should be denied.

It is, therefore, ORDERED that Ben Melton's Motion to Correct Filing Date, or in the Alternative for Leave to File is in all things DENIED.

Signed this _12th_ day of March, 2015.

DISTRICT JUDGE PRESIDING

6

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE, A DIVISION OF COLONIAL SAVINGS, F.A. - signed June 3, 2015 (2nd Supp. CR 4-9)

4

CAUSE NO. C130102-C

| | | |
|---|---|---|
| BEN MELTON,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| CU MEMBERS MORTGAGE, A<br>DIVISION OF COLONIAL SAVINGS,<br>F.A., FIRST WESTERN TITLE CO.,<br>AND BOB MIMS,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | |
| ———————————————— | §<br>§ | 340th JUDICIAL DISTRICT |
| CU MEMBERS MORTGAGE, A<br>DIVISION OF COLONIAL SAVINGS,<br>F.A.,<br>    Defendant/Counter-Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | |
| BEN MELTON,<br>    Plaintiff/Counter-Defendant. | §<br>§<br>§ | OF TOM GREEN COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
## MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE,
## A DIVISION OF COLONIAL SAVINGS, F.A.

**CAME ON TO BE CONSIDERED** the above-numbered and styled cause and the Court hereby makes the following Findings of Fact and Conclusions of Law with respect the Court's March 2, 2015 Order Awarding Attorney's Fees in favor of Defendant/Counter-Plaintiff CU Members Mortgage, a division of Colonial Savings, F.A. ("CU Members Mortgage" or "Colonial"):

## I. FINDINGS OF FACT

The Court makes the following findings of fact:

1. Plaintiff Ben Melton ("Plaintiff") filed his Original Petition on March 13, 2013, bringing claims related to a home equity loan that he took out on or about March 13, 2009 and which secured by a lien on his alleged homestead, 1969 Beaty Road, San Angelo, Texas 76904 ("the Property").

2. In his Original Petition, Plaintiff alleged, among other things, the following complaints against Colonial for alleged violations of the Texas Constitution in the origination of the home equity loan at issue in this suit: (a) that Colonial failed to provide Plaintiff with a Notice Concerning Extensions of Credit within twelve days of the closing on his loan; (b) that Colonial closed Plaintiff's home equity loan with a principal amount that exceeded an

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE,
A DIVISION OF COLONIAL SAVINGS, F.A..—PAGE 1

4

amount, when added to the principal balances of all other liens, 80 percent of the fair market value of the home; (c) Colonial closed Plaintiff's home equity loan with recourse for personal liability; (d) that Colonial failed to provide a copy of Plaintiff's final executed loan application and all executed documents Plaintiff signed at closing and failed to cure this notice obligation in a timely manner; (e) that Colonial failed to provide the true fair market value of Plaintiff's home on the date the loan closed; (f) that Colonial failed to cure the above-referenced defects.

3. For these alleged defects in the origination of his home equity loan, Plaintiff requested a declaratory judgment that the lien securing his home equity loan was thereby void as provided by article 16, section 50(a)(6) of the Texas Constitution.

4. For his declaratory judgment claim, Plaintiff requested attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code.

5. Plaintiff also asserted in his Third Amended Petition that the alleged defects in the origination of the loan relating to an alleged inflated appraisal of the Property performed by Defendant Bob Mims gave rise to claims against Colonial for statutory fraud pursuant to section 27.01 of the Texas Business and Commerce Code.

6. Colonial filed its Original Answer on May 31, 2013 and therein requested, among other things, the award of attorney's fees.

7. Colonial filed its First Amended Original Answer on June 27, 2013 and therein requested, among other things, the award of attorney's fees.

8. Plaintiff filed his First Amended Petition on August 5, 2013.

9. In his First Amended Petition, Plaintiff alleged, among other things, the following complaints against Colonial for alleged violations of the Texas Constitution in the origination of the home equity loan at issue in this suit: (a) that Colonial failed to provide Plaintiff with a Notice Concerning Extensions of Credit within twelve days of the closing on his loan; (b) that Colonial closed Plaintiff's home equity loan with a principal amount that exceeded an amount, when added to the principal balances of all other liens, 80 percent of the fair market value of the home; (c) Colonial closed Plaintiff's home equity loan with recourse for personal liability; (d) that Colonial required Plaintiff to apply the proceeds of his home equity loan to another debt not secured by his home; (e) that Colonial failed to provide a copy of Plaintiff's final executed loan application and all executed documents Plaintiff signed at closing and failed to cure this notice obligation in a timely manner; (f) that Colonial effectively included a prepayment penalty by allegedly including a lockout provision in Plaintiff's home equity loan; and (g) that Colonial failed to cure the above-referenced defects.

10. For these alleged defects in the origination of his home equity loan, Plaintiff requested a declaratory judgment that the lien securing his home equity loan was thereby void as provided by article 16, section 50(a)(6) of the Texas Constitution.

11. For his declaratory judgment claim, Plaintiff requested attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code.

12. Plaintiff also asserted in his First Amended Petition that the alleged defects in the origination of the loan relating to an alleged inflated appraisal of the Property performed by Defendant Bob Mims gave rise to claims against Colonial for statutory fraud pursuant to section 27.01 of the Texas Business and Commerce Code.

13. Colonial filed its Counterclaim on August 8, 2013.

14. In its Counterclaim, Colonial sought a judgment of foreclosure of the Property based upon Plaintiff's failure to make his payments as provided in his home equity note and the home equity Security Instrument. Colonial also requested its attorney's fees.

15. In his First Amended Petition, Plaintiff alleged, among other things, the following complaints against Colonial for alleged violations of the Texas Constitution in the origination of the home equity loan at issue in this suit: (a) that Colonial failed to provide Plaintiff with a Notice Concerning Extensions of Credit within twelve days of the closing on his loan; (b) that Colonial closed Plaintiff's home equity loan with a principal amount that exceeded an amount, when added to the principal balances of all other liens, 80 percent of the fair market value of the home; (c) Colonial closed Plaintiff's home equity loan with recourse for personal liability; (d) that Colonial required Plaintiff to apply the proceeds of his home equity loan to another debt not secured by his home; (e) that Colonial failed to provide a copy of Plaintiff's final executed loan application and all executed documents Plaintiff signed at closing and failed to cure this notice obligation in a timely manner; (f) that Colonial effectively included a prepayment penalty by allegedly including a lockout provision in Plaintiff's home equity loan; and (g) that Colonial failed to cure the above-referenced defects.

16. For these alleged defects in the origination of his home equity loan, Plaintiff requested a declaratory judgment that the lien securing his home equity loan was thereby void as provided by article 16, section 50(a)(6) of the Texas Constitution.

17. For his declaratory judgment claim, Plaintiff requested attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code.

18. Plaintiff also asserted in his First Amended Petition that the alleged defects in the origination of the loan relating to an alleged inflated appraisal of the Property performed by Defendant Bob Mims gave rise to claims against Colonial for statutory fraud pursuant to section 27.01 of the Texas Business and Commerce Code.

19. Plaintiff filed his Second Amended Petition on September 17, 2013.

20. In his Second Amended Petition, Plaintiff alleged, among other things, the following complaints against Colonial for alleged violations of the Texas Constitution in the origination of the home equity loan at issue in this suit: (a) that Colonial failed to provide Plaintiff with a Notice Concerning Extensions of Credit within twelve days of the closing on his loan; (b) that Colonial closed Plaintiff's home equity loan with a principal amount that exceeded an amount, when added to the principal balances of all other liens, 80 percent of the fair market value of the home; (c) that Plaintiff had no control over the appraiser; (d) that the appraisal was false because it was not performed according to certain standards; (e) that the appraiser improperly performed the appraisal by adding values; (f) Colonial closed Plaintiff's home equity loan with recourse for personal liability; (g) that Colonial required Plaintiff to apply the proceeds of his home equity loan to another debt not secured by his home; (h) that Colonial failed to provide a copy of Plaintiff's final executed loan application and all executed documents Plaintiff signed at closing and failed to cure this notice obligation in a timely manner; (i) that Colonial failed to provide the true fair market value of Plaintiff's home on the date the loan closed; (k) that Colonial failed to timely payoff other liens with the proceeds from the loan; (l) that Colonial effectively included a prepayment penalty by allegedly including a lockout provision in Plaintiff's home equity loan; and (l) that Colonial failed to cure the above-referenced defects.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE,
A DIVISION OF COLONIAL SAVINGS, F.A..—PAGE 3

6

21. For these alleged defects in the origination of his home equity loan, Plaintiff requested a declaratory judgment that the lien securing his home equity loan was thereby void as provided by article 16, section 50(a)(6) of the Texas Constitution.

22. Plaintiff also asserted in his Second Amended Petition that the alleged defects in the origination of the loan relating to an alleged inflated appraisal of the Property performed by Defendant Bob Mims gave rise to claims against Colonial for statutory fraud pursuant to section 27.01 of the Texas Business and Commerce Code.

23. Colonial filed its Motion for Summary Judgment on September 26, 2013 ("MSJ").

24. In its MSJ, Colonial presented evidence and argument that Plaintiff's claims for defects in the origination of his home equity loan were without merit because all such claims were barred by the Statute of Frauds. Colonial further argued that any claim for statutory fraud under section 27.01 of the Business and Commerce Code was also barred by the Statute of Limitations. Further, as all of Plaintiff's claims for affirmative relief were barred by the applicable Statute of Limitations, and as Plaintiff had breached his payment obligations on his home equity note, Colonial asserted in its MSJ that it should be awarded a judgment of foreclosure. Colonial in its MSJ also asked the Court to hold that Colonial was entitled to an award of attorney's fees, but that this sum would be proved up at a later date.

25. Plaintiff filed his Third Amended Petition on December 16, 2013.

26. In his Third Amended Petition, Plaintiff alleged, among other things, the following complaints against Colonial for alleged violations of the Texas Constitution in the origination of the home equity loan at issue in this suit: (a) that Colonial failed to provide Plaintiff with a Notice Concerning Extensions of Credit within twelve days of the closing on his loan; (b) that Colonial closed Plaintiff's home equity loan with a principal amount that exceeded an amount, when added to the principal balances of all other liens, 80 percent of the fair market value of the home; (c) that Plaintiff had no control over the appraiser; (d) that the appraisal was false because it was not performed according to certain standards; (e) that the appraiser improperly performed the appraisal by adding values; (f) Colonial closed Plaintiff's home equity loan with recourse for personal liability; (g) that Colonial required Plaintiff to apply the proceeds of his home equity loan to another debt not secured by his home; (h) that Colonial failed to provide a copy of Plaintiff's final executed loan application and all executed documents Plaintiff signed at closing and failed to cure this notice obligation in a timely manner; (i) that Colonial failed to provide the true fair market value of Plaintiff's home on the date the loan closed; (k) that Colonial failed to timely payoff other liens with the proceeds from the loan; (l) that Colonial effectively included a prepayment penalty by allegedly including a lockout provision in Plaintiff's home equity loan; and (l) that Colonial failed to cure the above-referenced defects.

27. For these alleged defects in the origination of his home equity loan, Plaintiff requested a declaratory judgment that the lien securing his home equity loan was thereby void as provided by article 16, section 50(a)(6) of the Texas Constitution.

28. Plaintiff also asserted in his Third Amended Petition that the alleged defects in the origination of the loan relating to an alleged inflated appraisal of the Property performed by Defendant Bob Mims gave rise to claims against Colonial for negligence, common law fraud and breach of contract.

29. Colonial's MSJ was heard on January 10, 2014.

30. On July 14, 2014 the Court signed its Order granting Colonial's MSJ and therein .

31. On December 8, 2014 Colonial filed its Motion for Attorney's Fees.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
MOTION FOR AWARD OF ATTORNEYS' FEES BY CU MEMBERS MORTGAGE,
A DIVISION OF COLONIAL SAVINGS, F.A..—PAGE 4

7

32. Plaintiff filed no response to Colonial's Motion for Attorney's Fees.

33. The Court on January 7, 2015 heard Colonial's Motion for Attorney's Fees ("Attorney's Fees Hearing").

34. At the Attorney's Fees Hearing, Colonial offered into evidence the Affidavit of Mark D. Cronenwett and the exhibits thereto, namely, the Curriculum Vitae of Mark D. Cronenwett and the billing invoices his law firm, Mackie Wolf Zientz & Mann, PC ("MWZM"), submitted for its work in this suit. These billing invoices included itemized billing statements showing the work performed by employees of MWMZ on behalf of Colonial in this matter.

35. Plaintiff offered no objection to either the Affidavit of Mr. Cronenwett or the exhibits attached thereto. Neither did Plaintiff offer any evidence to controvert the evidence offered by Colonial on the reasonableness of its attorney's fees and costs incurred in this action.

36. The Texas Home Equity Note, signed by Plaintiff, at paragraph 6(E) allows for Colonial to recover any fees necessary to enforce said Note.

37. The Texas Home Security Instrument, signed by Plaintiff, at paragraph 21 allows for Colonial to recover any fees necessary to enforce said Security Instrument.

38. The Texas Home Equity Security Instrument, signed by Plaintiff, at paragraph 9 provides that Colonial may recover attorney's incurred in defending its lien interest in the Property.

39. In its Notice of Default dated March 27, 2013 Colonial made demand on Plaintiff that he cure the amounts owed on the subject home equity loan. This demand was made more than 30 days before the date Colonial's MSJ was heard.

40. Colonial prevailed in its defense of the declaratory-judgment claims asserted by Plaintiff.

## II. CONCLUSION OF LAW

The Court makes the following conclusions of law:

41. Mark Cronenwett is qualified to provide expert testimony on the reasonableness of Colonial's attorney's fees incurred in this cause by in prosecution of its counterclaim and also in defense of the claims asserted by Plaintiff.

42. The rates charged by attorneys and legal assistants employed by MWZM are reasonable for civil litigation in Tom Green County, Texas.

43. The amount of time spent by attorneys and legal assistants employed by MWZM was reasonable.

44. The attorney's fees and costs incurred by Colonial in its defense of the claims asserted by Plaintiff in this cause and in its prosecution of its counterclaim in this cause, as specified in this Court's Order granting same signed on March 2, 2015, were reasonable and necessary.

45. Plaintiff's award of attorney's fees is supported by paragraph 6(E) of the Texas Home Equity Note, paragraphs 9 and 21 of the Texas Home Equity Security Instrument, section 38.001 of the Texas Civil Practice and Remedies Code and section 37.009 of the Texas Civil Practice and Remedies Code.

46. The attorney's fees incurred by Colonial in prosecution of its counterclaim were intrinsically intertwined with the attorney's fees incurred in defense of the claims asserted against Colonial in this cause by Plaintiff.

47. Plaintiff waived any objections to the evidence proffered by Defendants at Attorney's Fees Hearing.

SIGNED this 3rd day of June, 2015.

HON. JAY WEATHERBY
JUDGE PRESIDING

APPROVED AS TO FORM BY:

/s/ Mark D. Cronenwett
Mark D. Cronenwett
SBN 00787303
214-635-2650 (Phone)
214-635-2686 (Fax)
Mackie Wolf Zientz & Mann, PC
14160 N. Dallas Parkway, Suite 900
Dallas, TX 75254
ATTORNEYS FOR COLONIAL